CASE 96—ACTION BY JOSEPH MUIR AGAINST THIXTON, MILLETT & CO., TO RECOVER DAMAGES FOR THE DEATH OF A HORSE.—FEB. 9, 1904.

(Omitted in former reports.)

## Muir v. Thixton, Millett & Co.

APPEAL FROM NELSON CIRCUIT COURT—SAMUEL E. JONES, CIRCUIT JUDGE,

JUDGMENT FOR DEFENDANTS.   PLAINTIFF APPEALS.   AFFIRMED.

ANIMALS—RESTRAINT—UNINCLOSED   LANDS—STRAYS—INJURIES—ATTRACTIVE NUISANCE—LIABILITY OF LANDOWNER.

1. An owner of domestic animals is not bound to restrain them; but may lawfully permit them to run at large on the public highways and on uninclosed lands without regard to the ownership of such lands.

2. An owner of uninclosed lands is not liable for injuries to ani-

mals straying upon the land from a high way, unless he main-
tains or permits to remain thereon a nuisance liable to attract
such animals to their injury.

.3. Defendants maintained a cistern on their premises in connection
with their distillery, nearly 100 feet from a turnpike. When
plaintiff's horse, which had strayed from the turnpike, and had
been drowned in the cistern, was found, the covering of the
cistern had been displaced, and some of the pieces had fallen
into it. Grain was sometimes spilled on the ground near the.
distillery. One witness, who was uncontradicted, testified that
he had never seen stock eat the malt that was thrown on the.
ground, but at the time the horse was drowned the distillery
had not been operated for several days. HELD, that such evi-
dence was insufficient to establish that defendants maintained
an "attractive nuisance" on the premises, by which the horse
was invited thereon, and that defendants were therefore not lia-
ble for his death.

C. T. ATKISSON AND J. SMITH BARLOW, FOR APPELLANT.

Principles of law involved in this appeal.

1st. Owners of real property must so use it as not to injure
others.

2nd. In Kentucky, cattle can lawfully wander over uninclosed
prpoerty.

3rd. Where an artificial pitfall or cistern, dangerous to ani-
mals, is maintained without cover or barrier, on uninclosed
premises, near a public road, to which the stock of others have
access; the owner of the premises is liable in damages for stock
drowned therein, particularly when the stock is invited or al-
lured or tempted to come upon said premises.

AUTHORITIES CITED.

Amer. and Eng. Ency. of Law, 1st ed., vol. 7, pages 890-891,
vol. 16, pages 403-417; Thompson on Negligence, chapter 35, sec.
957, 1031 and 1032; Kentucky Statutes, sec. 43, 46 and 1474;
Bransome, Admr. v. Labrot and Graham, 81 Ky., 642; Macon R.
R. Co. v. Lester, 30 Ga., 914; Suley v. Peters, 5th Gilm. (Ill.),
130; Jones v. Nicholls, 46 Ark., 207; Haughey v. Hart, 62 Iowa,
96; Young v. Harvey, 16 Ind., 314; Townsend v. Wathen, 9
East, 277; Price v. Atchison Water Co., 58 Kan., 551; Biggs v.
Consolidated Barb. Wire Co., Lawyers' Reports Annotated, vol.
44, page 655.

JOHN S. KELLY, ATTORNEY FOR APPELLEES.

Our contention is:
1. That the plaintiff's horse was a trespasser upon the premises of defendants, and although the premises were uninclosed and the cistern into which the horse fell was uncovered the defendants were under no legal obligation to keep their premises in a safe condition against a trespasser.

2. The defendants (appellees) are not guilty of negligence in failing to do that which the law does not require them to do,

3. The plaintiff, in suffering his stock to run at large, was guilty of negligence and can not recover because of contributory negligence.

4. There is no proof that the horse went on the premises for food or water, and the claim that he was allured on the premises by grain being left there is without any foundation.

### AUTHORITIES.

Shearman v. Redfield, on Neg., vol. 2 (5 ed.), sec. 418, 705; L. & F. R. Co. v. Melton, 14 B. Mon., 80; L. & F. R. Co. v. Ballard, 2 Metc., 180; Kentucky Statutes, sec. 4654; Vanderbeck v. Hendry, 34 N. J. Law, 467; Galveston Oil Co. v. Merton, 70 Tex., 400 (7 S. W., 756); Thompson on Negligence, sec. 559, 945, 955, 956; 46 L. R. A., 60, see note.

OPINION OF THE COURT BY JUDGE SETTLE—AFFIRMING.

This action was instituted by the appellant against the appellees to recover damages for the death of a horse, which in straying upon the distillery premises of the appellee's, fell into a cistern and was drowned. The distillery grounds front on the Bardstown and Loretto turnpike in Nelson county, and are uninclosed. The cistern in which the appellant's horse was drowned is situated in the rear of the distillery buildings, and nearly 100 feet from the pike, and is used for supplying the distillery with water when in operation. The water with which the cistern is filled is conducted into it by a pipe connecting it with a nearby spring. According to the evidence the appellant's horse escaped from his lot or field, on the night of June 27, 1903, and went up-

on the appellees' premises, where it was found on the following morning in the cistern, dead. Whether the animal fell into the cistern while grazing near it or in trying to drink therefrom does not appear. It is, however, averred in the petition that it was induced to enter the premises of appellees, as was common with other stock in the neighborhood, to eat corn or malt which appellees' servants negligently permitted to fall and remain upon the ground in and about the premises, and that by reason thereof, and appellees' further negligence in permitting the cistern to remain uncovered, the horse met its death. The answer denied the alleged acts of negligence set forth in the petition, or that the horse was thereby led to enter the distillery premises, and averred that at the time of its death the horse was trespassing upon appellees' lands, and had been either driven thereon by its owner, or by the negligence of the latter had been turned out upon the highway and allowed to stray wheresoever it would. The affirmative matter of the answer was controverted by reply, and upon the trial which followed the making up of the issues the lower court at the conclusion of all the evidence peremptorily instructed the jury to find for the appellees, and they thereupon returned a verdict as instructed, upon which judgment was entered dismissing the petition and allowing appellees their costs. Of the action of the trial court in giving the peremptory instruction and in overruling his motion for a new trial the appellant complains.

The question presented by the appeal is interesting because of its novelty and the zeal with which counsel have urged their respective contentions. We find in Thompson's Negligence, vol. 1, § 938, this statement of the law on this subject: "In most of the States of the American Union, with the exception of some of the Eastern States, the com-

mon law of England, which requires the owner of cattle to restrain them, is not in force; but they may lawfully run at large upon the public highway and upon uninclosed lands without regard to the ownership of such lands. The difference is that by the common law of England the owner of cattle must fence them in, whereas by the general law of America the owner of the land must fence them out." In section 959 we are also told by the learned author that: "Where domestic animals are allowed to run at large, and they stray upon uninclosed lands and are injured, the owner of the lands can not be held liable therefor. A landowner is no more obliged to prepare his land in any particular way for the protection of his neighbor's cattle, not invited or tempted to come upon it, than for the protection of his neighbor himself. For example, a landowner is under no obligation to fence his land bordering upon the highway, or to keep such fences or gates in them, so as to prevent the animals of another, which are allowed to run at large upon the highway, from getting through the land upon a railroad track, and there being killed." The English law rests the rule upon the proposition that the owner of domestic animals has no right to allow them to stray upon open grounds, and that, if he does so, it is at his peril. Upon the other hand, the doctrine in most of the American States is that cattle may run at large upon the highway and upon uninclosed lands without regard to the ownership of such lands. Under the doctrine last stated the owner or occupant of land, as we have already observed, is under no obligation to make it safe for the benefit of the owners of domestic animals which are permitted to run at large. But, while this is true, an exception to the rule exists, as we are told by Mr. Thompson, in what are sometimes called "attractive nuisances," so that, if the owner or occupant of real property erects and leaves

upon his premises anything which is especially attractive to
young children, or to domestic animals, and children or ani-
mals are attracted to it to their hurt, he must pay damages.
Branson's Adm'r v. Labrot, etc., 81 Ky., 642, 5 R. 827, 50 Am.
Rep., 193; Jones v. Nichols, 46 Ark., 207, 55 Am. Rep.,
575; Haughey v, Hart, 62 Iowa, 96, 17 N. W., 189, 49 Am.
Rep., 138; Young v. Harvey, 16 Ind., 314. We regard the
rule, supra, as the law in this State, and, though some of the
authorities relied on by counsel for the appellees seem to
support the contrary view, upon examination it will be
found that they apply to those States wherein the common
law is in force or statutes have been enacted which require
the owners of stock to keep them within their own inclos-
ures. The case of L. & F. R. R. Co. v. Ballard, 2 Metc., 180,
cited for appellees, is not in point. It only holds that a
railroad company is not bound to fence its track, and that,
as its trains have the right of way on and over the track,
owners of cattle are under peculiar obligations to keep them
off the track. This rule does not, however, apply to other
owners of uninclosed lands. We have in Kentucky no stat-
ute preventing the running at large of stock, though there
is what may be called a "local option" stock statute, which
may be put in force in a given territory by a majority vote
of the citizens thereof, in which event the owners of stock
in such territory will be required to keep them upon their
own lands. But applying the law as we have announced it
to the facts of this case, we are nevertheless of opinion that
appellant was not entitled to recover. Several of the wit-
nesses testified that in unloading grain at the distillery it
was often the case that some of it was spilled on the ground,
and that stock were frequently attracted by the grain thus
left upon the ground, and at such times would go upon the
premises and eat it. But no witness testified that there was

Muir v. Thixton, Millett & Co.

any grain or other provender attractive to stock on the distillery grounds at or just before the time the appellant's horse was killed. Upon the contrary, the evidence showed that the distillery was "closed down"—that is, ceased to be operated—June 22d, and the horse was not killed until June 27th, five days thereafter. And if, as stated by some of the witnesses, hogs and other stock were so frequently lured to the premises by the spilled corn, it is to be presumed that they would in five days have eaten and removed what grain was left on the ground, if any, at the time the distillery ceased to be operated. Some of the witnesses also testified that appellees' servants sometimes threw malt on the ground from the distillery, but the proof is silent as to there being any malt on the ground at the time the appellant's horse was killed; and one witness, an employee of the appellees, testified that he had never seen the stock eat the malt that was thrown on the ground, which statement was not contradicted by any other witness.

In our opinion the cistern was not dangerous per se. It was in the rear of the distillery building, from 80 to 100 feet from the pike. It will be found that only one witness said the water in the cistern could be seen from the pike; others said it was not visible from the pike. Several witnesses testified that planks were kept upon the cistern. One witness (N. R. Boon) says that it was covered with not less than nine pieces of timber. J. C. McKelvey was the revenue officer in charge of the distillery at the time appellant's horse was killed. He first discovered it in the cistern, and from his testimony it is evident that the timber or covering of the cistern was displaced by the horse when he fell into it, for he stated that some of the pieces had fallen into the cistern and others were projecting over it, and others still were lying by it on the ground. It is manifest, therefore, that some precautions had been taken by appellees

or their employes in covering the cistern. It should be bourne in mind that, if appellees can be held liable at all, it must be upon the ground that they maintained upon the premises an "attractive nuisance" by which the horse of appellant was invited thereon. As to the care required of them in such a state of case we find the rule thus stated in section 595 of Thompson's Negligence: "The same rule, subject to qualifications, applies to the case of injuries to domestic animals through pitfalls or other dangers upon uninclosed grounds. That rule is that the owner or occupier of land is under no legal obligation to take special care or pains to the end of keeping it safe for the protection of the animals of others which may be allowed to run at large; and this without reference to the question whether the rule of the English common law prevails, which requires the owners of domestic animals to restrain them at their peril, or whether the rule of most of the American States prevails, which allows domestic animals to run at large, and requires the owners of cultivated fields to fence them." As the appellees' liability, if any, must rest upon the ground that they maintained upon the distillery premises an "attractive nuisance," whereby appellant's horse was induced to enter the same, it necessarily follows that, if no such attraction existed, no cause of action arose against appellees in appellant's behalf for the death of the horse, though caused by its fall into the cistern. Under the facts of this case, the cistern was not necessarily dangerous, or per se a nuisance, nor was there at the time of the death of the appellant's horse anything on or about the distillery premises that could have been called an attractive nuisance by which it was invited to go upon appellees' land.

We are therefore of the opinion that the trial court did not err in granting the peremptory instruction. Wherefore the judgment is affirmed.