# Adams Brothers v. Clark.

(Decided October 12, 1920.)

## Appeal from Livingston Circuit Court.

1. Animals—Fowls Running at Large—Destruction of Grain and Vegetables.—The rule of the common law with respect to fowls running at large is in force in Kentucky, and if a poultryman allows his chickens to run at large and they trespass upon the garden of another, the wronged person has no right to kill them, but must confine himself to his civil rights, and this is true even though the gardener should find the fowls trespassing at the time.

2. Animals—Fowls Running at Large—Duty of Owner of Chickens to Confine Them.—It is the duty of the owner of chickens and other such fowls to confine them on his own premises, if it is likely that they will stray on the premises of another and there do damage.

3. Animals—Trespass of Domestic Fowls—Damages.—One who sustains a loss through the trespass of domestic fowls of another may recoup such loss in damages by a proper action seasonably commenced, even though his premises are wholly unfenced.

4. Animals—Fowls Running at Large—Ordinances.—A municipality may by ordinance regulate the running at large of animals, including fowls, and when it passes an ordinance forbidding the owner of fowls to allow them to run at large and provides a penalty for its violation, it becomes a wrongful act to allow domestic fowls to run at large over the property of others in the city and the owner is liable for their depredations both under the ordinance and the common law.

C. H. WILSON for appellant.

COX & GRAYOT for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

By this appeal we are asked to decide whether the owner of trespassing chickens which have crossed over a lawful fence, as defined by our statutes, and eaten and destroyed grain and garden vegetables of great value of another, is liable for the loss and damage thus occasioned by his fowls. It is a case of first impression in this jurisdiction. Indeed there appear to be few cases upon the subject found in the reports of either England or America, and the text writers have carefully avoided the question, although we do find many texts by learned

writers as well as decisions by this and other courts dealing with the liability of the owner of domestic animals other than fowls, for trespass.

That we may have a clear understanding of the case before us for decision, we will say that appellants, Adams Brothers, have a large feed barn and garden surrounded by a lawful fence four and one-half feet high in the city of Smithland. Before the commencement of this action they had kept a large amount of live stock in and on their premises aforesaid and had kept large quantities of grain for stock feed in their barn, and in a part of their lot they had planted a garden of vegetables. Just across the street Mrs. Byrnes Clark has a poultry yard wherein it is alleged she kept from 250 to 400 chickens. These chickens crossed the fence into the lot of Adams Brothers and there ate and destroyed large quantities of grain in the barn and ate and destroyed the garden vegetables belonging to said Adams Brothers, to their damage, as it is alleged, of $600.00, and this suit was instituted by them against Mrs. Clark to recover that sum for the loss and damage caused by the chickens. She filed a general demurrer to the petition, which was sustained, with leave to Adams Brothers to amend, which was done, and she again filed a general demurrer to the petition as amended which, after due hearing, the court sustained, and appellants declining to further plead their petition was dismissed and they appeal, thus raising in this court the question stated above, the facts being admitted.

By the common law of England the owner of domestic animals, including fowls, was required to keep them on his own premises, and was liable for their trespass upon the lands of another. The courts held that an entry of a person's cattle on another's land constituted actionable trespass, regardless of whether the lands were enclosed or not. The same rule was applied to fowls as to cattle, and the owner was made to respond in damages for their depredation. However, in many of the states in this union the common law rule of England was found inapplicable to the prevailing conditions and our courts and legislative bodies have modified the rule in some of the states so that the owner of live stock is not compelled to keep them enclosed but may allow them to range at will on uninclosed land of others without incurring liability therefor. This modification, so far as it affects Kentucky, applies only to cattle and not to fowls.

Our legislature many years ago passed an act defining what constituted a lawful fence and allowing recovery for

the destruction of property by domestic animals only in cases where the one complaining had his property enclosed by a fence of a given height, strength and closeness. Manifestly, this statute, which reads: "Every strong and sound fence of rails, or plank, or wire, or wire and plank, or iron or of hedge, four and one-half feet high, and being so close that cattle can not creep through, or made of stone or brick four and one-half feet high, or a ditch three feet deep and three feet broad, with a hedge two feet high, or a rail, plank, stone, smoothed or barbed wire, or a brick fence two and one-half feet high on the margin thereof, the hedge or fence being so close that cattle can not creep through, shall be deemed a lawful fence," was not intended to apply to chickens or other fowls but only to such stock as are included in the generic term cattle.

The next section No. 1781, which reads: "If any cattle shall enter into any grounds over or through a lawful fence the owner or manager of the cattle shall, for the first breach, be liable to the owner or occupant of such ground for such damage to his trees, grass, grain, crops, cattle or land as he may have sustained thereby; and for every subsequent breach by the cattle of the same owner, double damages. And after giving the owner or manager of such cattle at least five days' notice, in writing, of the fact of two previous breaches into the same inclosure by the cattle of the same owner, the owner or occupant of such inclosure shall have a lien on the cattle to indemnify him on account of any damages sustained by the third or any subsequent trespasses of such cattle and may enforce his lien by action as in case of a mortgage lien," makes it certain that only such domestic animals as are included in the term "cattle," as defined by law, are embraced within the act. The statutes, section 1781, follow the common law and award the injured party practically the same remedy anciently provided by the common law. Thus it will be seen that while our legislature has modified the common law rule with respect to the running at large of cattle, and the courts have concurred in this departure, there has been no change whatever in the common law with respect to fowls, such as chickens.

We have no national common law in the United States, but we do have a common law in the several states, each for itself, but this common law is always subject to change by statute. 5 R. C. L. 809.

In the absence of a national common law in this country each state is left to determine the common law for itself according to its peculiar needs and policies. By our Constitution it is provided:

"All laws which on the first day of June, one thousand seven hundred and ninety-two, were in force in the state of Virginia, and which are of a general nature and not local to that state, and not repugnant to this Constitution, nor to the laws which have been enacted by the general assembly of this Commonwealth, shall be in force within this state until they shall be altered by the general assembly."

The common law of England, subject to such legislative enactment as the assembly of Virginia had passed, was in force in Virginia at the time of the adoption of our present Constitution and, therefore, became a part of the law of our state by the section above quoted, and indeed has been the law of our state from the adoption of our first Constitution. The Virginia convention of 1776 declared "that the common law of England, all statutes or acts of parliament made in aid of the common law prior to the fourth year of the reign of King James I, and which are of a general nature, and not local to that kingdom . . . shall be the rule of decision, and shall be considered in full force until the same shall be altered by the legislative power of this colony." Manier v. Myers; &c., 4 B. Mon. 514; Ray v. Sweeney, 14 Bush 1; Nider v. Commonwealth, 140 Ky. 684; Aetna Insurance Co. v. Commonwealth, 106 Ky. 64; Campbell v. Ritter Lumber Co., 140 Ky. 312; Muir v. Thixton Millett, &c., 119 Ky. 753; 3 Corpus Juris 127 and 129.

We are unable to find any enactment of our lawmaking body or judicial warrant for changing or modifying the common law rule in Kentucky with respect to domestic fowls. It is argued by counsel for appellee that by long usage and custom the people of Kentucky have established a common law which allows the running of fowls at large without the owner incurring liability for their foraging. It is possible for a Commonwealth like Kentucky to so establish law, but it is hardly possible where such rule transcends the emphatic and unmistakable enactment of the lawmaking body or a constitutional provision of the state. It must be granted that the common law of a state may be changed at any time by a legislative act and certainly by constitutional provisions. Since we by our Constitution and by act of our legislature have adopted the common law with respect to the

running at large of domestic animals, including fowls, in so far as we have not specifically changed the same by act of our general assembly, it follows that the rule of the common law with respect to fowls is in force in the same way and to the same extent in Kentucky that it was at the time of the adoption of our Constitution, and at the time of the act of our legislature adopting the common law, and is as much a part of our law as any statute which we have adopted. This must be so even though we sometimes find it difficult in wading through texts and court decisions to determine exactly what the common law rule was upon a given subject. 2 Cyc. 376-374, 1 R. C. L. 1148; 3 Corpus Juris 126 and 127.

There can however be no doubt about the common law rule with respect to cattle, for it is laid down by Blackstone and other ancient common law commentators in substance as follows: The entry of a person's cattle on another's land constitutes an actionable trespass regardless of whether the land is inclosed or uninclosed. The right to recover damages is, however, affected by the fact that a duty to fence his lands is sometimes impressed on the latter by agreement, by prescription or by statutes. The rule applicable to cattle governs the right to recover damages against the owner of fowls who permits them to trespass upon another's land, and this is the view taken in reported cases wherein it is held that one who permits fowls under his control to make incursions on another's premises and damages the latter's goods is liable as for a trespass. The remedy was held to be (a) impounding the fowls or (b) by action for damages on the part of the owner of the lands invaded, but he had no right to kill or injure the fowls. 3 Blackstone Com. 211; Pickett v. East and West India Docks, etc., R. Co., 12 English Law and Equity 520; Louisville, &c., R. Co. v. Ballard, 2 Metc (Ky.) 177; Wells v. Beal, 9 Kans. 597; a Am. L. J. 116; Harrison v. Brown, 5 Wis. 27.

The common law in such American states as have declared upon the subject seems to correspond to the English common law. In one case it was held that a flock of turkeys which entered upon the lands of another and destroyed apples and corn incurred a liability against their owner even though the premises were unfenced because the owner through his fowls became a trespasser, the court saying: "He (the landowner) is not bound to fence against any such animal, and may lawfully omit to do so." Bulpet v. Matthews, 145 Ill. 345; McPherson v. James, 69 Ill. App. 337. It has also been held that do-

mestic fowls are animals and subject to all the rules and regulations, governing animals under the common law. State v. Brumar, 111 Ind. 98.

In the early history of this state when settlements were scattered and rural districts but sparsely settled, there was little or no excuse for enforcing the common-law rule against the running at large of fowls, and it has seldom if ever come up in our courts, but under present conditions, such as prevail in Smithland and other towns and communities in this Commonwealth, it is highly important that the owner of fowls should have regard for their roving and wasteful natures and exercise care to see that they do not do damage to the crops or property of another.

It is argued in brief of counsel for appellee that the right to freely range their chickens is of the utmost importance to that "great number of people in all the towns and cities and in the rural districts all over the state who, by raising and keeping flocks of these valuable fowls, are endeavoring to meet the high cost of living and make their small salaries and small business enterprises carry them and their families through the year," but the equally important and sacred right of the same class of citizens, equally great in number, to plant and raise a garden or truck patch on their own premises, without annoyance or trouble to neighbors, to help feed themselves and families and thus tide over the high cost of living period is wholly overlooked and forgotten. The right of free range to the chicken ends where the equal right of the gardener begins. The poultryman has rights in his property just as the gardener has in his, but no greater, and neither is required to yield to the other except that the one must yield where his rights cease and the other's begin. One must always use his property in a way not to do a legal wrong to another. If a poultryman allows his chickens to run at large and they trespass upon the garden of another, the wronged person has no right to injure or kill them but he must confine himself to his civil rights, and this is true even though the gardener should find the fowls on his possessions trespassing at the time.

The common law with respect to such fowls has never been changed from its adoption at an early period in this state. It, therefore, follows that it is the duty of the owner of chickens and other such fowls to confine them on his own premises, if it is likely that they will stray on to the premises of another and there do damage. It has never been lawful in this state, though the general prac-

tice, for the owner of fowls to allow them to range at will on the land and property of another against his consent, for a trespass, such as is complained of in this case, the law affords at least one remedy and that remedy was invoked by Adams Brothers in the bringing of this action against Mrs. Clark. We, therefore, hold that one who sustains a loss through the trespass of domestic fowls of another, may recoup such loss in damages by a proper action seasonably commenced, even though his premises are wholly unfenced, because it would be well nigh impossible to fence against such animals as have the power to mount on wings. This we conceive to be the common law of Kentucky as adopted from the English common law.

The petition alleges that the board of trustees of the town of Smithland has regularly enacted the following ordinance:

"That it shall be unlawful for any chicken, duck, guinea, goose or any fowl of the avian or aquatic family to run at large within the corporate limits of the town of Smithland, Ky., and any one suffering or permitting any such fowl or fowls to run at large within the corporate limits of said town shall be fined not less than $1.00 nor more than $5.00 for each offense. This ordinance to take effect from June 25th, 1917."

It then alleges "that on the 25th day of June, 1917, and prior thereto and since said time, they (appellants) were and have been the owners and in possession of one large stock and feed lot, etc. . . . That defendant (appellee) keeps and maintains a large poultry lot in said town just across the street from plaintiffs' said barn and lot and was on June 25, 1917, and prior thereto and all during the time since said date has been the owner of a large number of chickens and other fowls, ranging in number from about 250 to 400, which said chickens and fowls, the defendant unlawfully and in violation of law and the above quoted ordinance of said town and in violation of law and plaintiffs' rights, were permitted by the defendant to run at large and upon the streets of said town, and allowed to trespass upon the lot and enter into the feed barn of these plaintiffs (appellants) and eat with their livestock and to eat and destroy and waste large quantities of their feed, etc." It is the contention of appellants that since by the ordinance above quoted it is unlawful for appellee to allow her chickens to run at large, it was negligence *per se* to allow them to range on appellants' lot and eat their food in their barn. This

court has held in. cases where. an ordinance was violated that no recovery in damages would be had merely for the violation of the city law, if there was in fact no negligence. These cases arose out of ordinances fixing the rate of speed of trains at street crossings and upon the public thoroughfares. Dolfinger & Co v. Fishback, 12 Bush 474; Lexington & Big Sandy R. R. Co. v. Gartnell, 10 Ky. Law Rep. 777; Louisville & Nashville R. R. Co. v. Redmond's Admr., 26 Ky. Law Rep. 1288, 91 S. W 722; Ford's Admr. v. Paducah City Ry. Co., 30 Ky. Law Rep. 644, 99 S. W. 355.

In the case of Mullins v. Nordlow, 170 Ky. 183, we held that a city ordinance requiring owners of buildings of more than one story to provide fire escapes which fixes a penalty for its violation, renders the owner liable in damages for injuries resulting from violation of the ordinance. The ordinance in that case required "Every building three or more stories high, used as a hotel, office building, theatre, lodging or apartment house, tenement or manufacturing purposes shall have at least one fire escape." No fire escapes were provided and in a fire one person was injured and two more killed and a recovery was allowed. In so holding we said, "The mandatory provisions of this ordinance admittedly were never complied with by appellant, for no fire escapes were erected on the building. The failure to provide them was not only negligence but also a wrongful act within the meaning of section 241 Constitution. Argument is not required to show that failure to comply with the requirements of an ordinance for the protection of human life, where a fine which may be collected by imprisonment is imposed for its violation, is a wrongful as well as a negligent act. . . . . "

In the instant case the ordinance was passed for the protection of property and the avoidance of a nuisance and. when appellee wilfully violated the ordinance by allowing. her chickens to range at large and go upon the property of appellants and commit depredations she was guilty of a wrongful act which rendered. her liable. for all the actionable injury done by her fowls. In passing the ordinance the city of Smithland was thoroughly within its power and it was legislating upon a subject clearly within its scope. A municipality may by ordinance. regulate the running at large of domestic animals including fowls, and. when it passes an ordinance forbidding the owner of fowls to allow them to run at large and provides a penalty for the violation of the ordinance, it then

becomes, if it were not before, a wrongful act to allow domestic fowls to range at will over the property of others in that city, and the owner is liable for their depredations by reason of the ordinance as well as the common law of the land. Brady v. Staub, 177 Ky. 468; Wigginton & Sweeney v. Bruce, 174 Ky. 691.

In Corpus Juris, volume 3, page 97, the rule is stated as follows:

"Under positive laws forbidding the owner of specified domestic animals to permit them to run at large in the highways, it has been held that he is liable for any injury resulting from their being at large, whether he knew that they had escaped or not, and that his negligence may be presumed from the fact that the animal inflicts the injury in a place where it had no right to be."

The same author on page 94 says:

"Thus a person who allows his horses to be at large where they have no right to be, as on a sidewalk, or who permits his cattle to run in a highway in violation of a statute prohibiting them from running at large is liable in damages for injuries committed by them while so running at large, without reference to the question of the animal's viciousness, and even though he did not know that they were in the highway at the time of the injury, unless their presence there is not due to his fault, or constitutes no breach of duty due from defendant to plaintiff."

Every owner of fowls must know their nature and their proneness to run at large and wander far from home; to make incursions upon the property of others and there commit depredations. This is their inherent nature. It is the natural propensity of domestic fowls to rove and in doing so to wholly disregard property lines and even fences. This propensity is well known to all owners, and when an owner with this knowledge allows his fowls to run at large to the injury of his neighbors he is a wrongdoer and is liable for their trespasses even in the absence of a statute or ordinance to that effect.

It is also contended by appellee that the maintenance of a barn by appellants amounted to an attractive nuisance in so far as chickens and fowls are concerned. We can not agree with this contention. The attractive nuisance doctrine has no application to the facts of this case. It is lawful to have and keep upon your place a barn with grain in it and it has never been held that such is an attractive nuisance even to fowls. This doctrine has only been applied to cases where one erects upon his

premises and leaves unguarded a contrivance or device which in its nature is calculated to entice children or other thoughtless persons on to the premises to their personal injury, but has never so far as we are able to ascertain been applied to a situation where animals have crossed a lawful fence and committed depredations to the injury of the person on whose premises they entered.

The trial court committed prejudicial error in sustaining a demurrer to the petition as amended of appellants, Adams Brothers. The cause is therefore reversed for further proceedings in harmony with this opinion.

Judgment reversed.