**CINCINNATI-LOUISVILLE THEATER CO. v. MASONIC WIDOWS' AND ORPHANS' HOME AND INFIRMARY et al.**

(Circuit Court of Appeals, Sixth Circuit. May 6, 1921.)

No. 3514.

1. **Landlord and tenant ⊂⇒44(2)—Intention of parties determines whether covenants run with the land.**

Regardless of whether St. 32 Hen. VIII, c. 34, was adopted as part of the common law of the state, the question whether a covenant in a lease runs with the land or is merely a personal covenant is dependent on the intent to be inferred from the language of the instrument with the aid of settled rules of construction and in the light of the attendant circumstances.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Landlord and tenant ⚙︎95—Provision for surrender of lease on payment of stated sum held to run with land.**

A provision in a lease whereby the lessee agreed to surrender possession in case of a bona fide sale of the premises on payment to it of a stated sum, depending on the balance of the term yet to run, which was manifestly inserted to facilitate the sale of the premises, and was not of a personal character, since its enforcement would depend on desire of the purchaser, not of the lessor, runs with the land and may be enforced by a grantee on making a second sale.

3. **Landlord and tenant ⚙︎95—Provision for surrender of lease on sale of property held contingent limitation.**

A provision in a lease that the lessee would surrender possession on the payment of a stated sum in case of a bona fide sale of the premises imposes a contingent limitation upon the terms which can be enforced by proceedings to recover possession and does not limit the lessor or his purchaser to a recovery of damages.

4. **Specific performance ⚙︎58—Provision for payment of liquidated damages ordinarily does not defeat obligation of purchaser to perform.**

A provision in a contract for the sale of real property that the purchaser shall deposit a sum which shall be forfeited to the vendor as liquidated damages in case of the purchaser's failure to perform his contract ordinarily does not give the purchaser the option to refuse to perform on payment of the money or defeat a suit against him by the vendor for specific performance.

5. **Landlord and tenant ⚙︎95—Purchaser held to have elected to take property, so as to make transaction bona fide sale.**

One who had signed a contract for the purchase of leased premises on condition that possession could be secured from the tenant under the terms of the lease, and who thereafter joined with the lessor in a suit to cancel the lease and recover possession of the property, thereby elected to take the property, if he had previously an option to refuse to take it, so that the transaction became a bona fide sale, within the provision of the lease requiring the lessee to surrender possession of the property in that event.

In Error to the District Court of the United States for the Western District of Kentucky, at Louisville; Walter Evans, Judge.

Action by the Masonic Widows' and Orphans' Home and Infirmary and another against the Cincinnati-Louisville Theater Company to recover possession of leased premises. From a judgment of restitution, the defendant brings error. Affirmed.

The Masonic Grand Lodge, of Kentucky, owned a building in Louisville. The building contained a theater, and on October 1, 1917, the Grand Lodge leased the theater to the Cincinnati-Louisville Theater Company for two years. The lease contained many detailed provisions appropriate to the situation, including one providing that the lessee might renew for further periods to make a total of ten years. It then continued as follows:

"It is distinctly understood between the parties hereto that the party of the first part [lessor] reserves the right to cancel this lease and any extension thereof at any time in the event of an actual and bona fide sale of the fee of the property, by giving the party of the second part [lessee] at least 90 days' written notice of its intention so to do and by paying to the party of the second part * * * $8,000 if said lease is canceled between October 1, 1919, and October 1, 1920."

The lease was duly extended to cover the period expiring October 1, 1920. On June 10, 1919, the Grand Lodge sold the fee of the property to the Masonic Widows' and Orphans' Home and Infirmary, a Kentucky corporation (hereinafter called the Home), and it was thereafter recognized as the lessor. On

⚙︎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

June 15, 1920, the Home entered into a contract of sale of the property to Flexner. It was, in form, a complete contract of sale, providing for a $50,000 down payment as specified, and then for a deed and mortgage back, and its sufficiency as the "bona fide sale" contemplated by the cancellation provisions of the lease is not challenged, except for the matters to be mentioned. It provided that the sale and conveyance were made "on the following terms, conditions, and stipulations." The pertinent ones of these provisions are 2, 7, 8, 9, 10, and 11, and they are quoted in the margin.[1]

---

[1] "2. The party of the second part has delivered to first party a certified check for $10,000 with his bid, and it is agreed that if second party or his assignees shall fail to carry out or comply with any of the terms of the agreement, said $10,000 shall be forfeited to and become the property of the first party as liquidated damages, but if second party or his assigns carry out all the terms of the agreement, then said sum is to be credited on the first payment herein provided for. It is agreed between the parties hereto that said check shall be deposited with the Louisville Trust Company under contract by which it will pay interest on said sum of $10,000 at the rate of 4 per cent. per annum, and the accumulated interest shall, if second party complies with the terms of the contract, inure to his benefit."

"7. The first party shall retain possession and control of said property, collect and appropriate all rents and income therefrom, until second party has paid the $50,000 cash and executed and delivered to first party the notes for the balance of the purchase price, but if any of the leases now on space in said building are renewed, or new leases executed, the second party shall first give his approval thereto. When said deed is delivered, the first party will transfer and assign to first party all the leases on space in said building other than the lease held by the Cincinnati-Louisville Theater Company, which lease is to be canceled.

"8. The Cincinnati-Louisville Theater Company is now occupying the auditorium in said building together with the office, under a lease executed by the Grand Lodge of Kentucky, F. & A. M., before it transferred said property to first party and said lessee is claiming the right to continue to occupy said property under said lease until 1927. Said lease is referred to for more particular description. Under the terms thereof, in case of a sale of the fee-simple title, said lease can be canceled by giving ninety days' notice and paying to the lessee the sum therein specified. It is agreed that the first party will give the notice required and will loan its name and moral influence in securing the cancellation of said lease, but the second party will pay all the costs, including attorney's fees, incident to the proceedings to cancel same, and will pay to the lessee the sum required to be paid when said lease is canceled.

"The party of the second part is to be represented by his own counsel in any proceedings to cancel said lease, but the party of the first part is to have the right to designate an attorney to represent the owner of the property, who shall, in all respects be on equal footing with the attorneys of the party of the second part, in all matters relating to the proceedings, if any, to cancel said lease, and such attorney is to be paid by the party of the second part. All of said attorneys so selected will be authorized and directed to take immediate steps to have said lease canceled, unless the lessees voluntarily surrender the possession of said property and they will be authorized and directed to institute any proceedings which may be necessary, and prosecute same to a speedy and final conclusion.

"9. In the event the lease is not ultimately canceled, or the possession of said property obtained, then the said Flexner or his assigns shall have the right to rescind the contract after having paid all cost, expense, attorney's fees and other fees contracted in any such proceedings, and the owner will return to him said $10,000 which has been paid, as above set out; but, if said Flexner does not pay all of said expense, any unpaid part shall be paid out of said $10,000, and the remainder only of such money shall be returned to said Flexner, if any.

"10. Said Flexner, at his election, shall have the right to purchase said property, although said lease may not be canceled, but he shall give notice of

On June 22, 1920, notice in writing was given to the Theater Company by the Grand Lodge, the Home, and Flexner that the sale to Flexner had been made and that the right of cancellation of the theater lease was exercised, and the $8,000 payment provided for upon cancellation was tendered, but refused. Thereupon the Home and Flexner brought in a state court a proceeding to recover possession. The Theater Company removed the case to the court below, it was tried before the court without a jury, upon due waiver, and findings of fact were made. Upon these findings, judgment of restitution was rendered, and the writ directed to issue upon the payment into court of the $8,000 fund. The Theater Company brings error.

Frank F. Dinsmore and Samuel I. Lipp, both of Cincinnati, Ohio, (Ben L. Heidingsfeld, Frank F. Dinsmore, and Samuel I. Lipp, all of Cincinnati, Ohio, and Selligman & Selligman, of Louisville, Ky., on the brief), for plaintiff in error.

James Garnett and M. M. Logan, both of Louisville, Ky. (M. M. Logan, S. S. Blitz, and James Garnett, all of Louisville, Ky., Leo M. Butzel, of Detroit, Mich., and Garnett & Van Winkle, Logan & Myatt, and Eli H. Brown, Jr., all of Louisville, Ky., on the brief), for defendants in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). There are three substantial contentions made by the plaintiff in error: The first is that the right to cancel did not pass to the lessor's grantee, but was personal to the lessor; the second is that the covenant for cancellation, if broken, only gave rise to an action for damages; the third is the contract with Flexner was not the "bona fide sale" which would justify cancellation.

[1] 1. Does the covenant for cancellation run with the land so as to avail the lessor's grantees? It does not seem very material whether the statute of 32 Hen. VIII, c. 34, forms a part of the law of Kentucky by virtue of the Kentucky statute of 1792, which adopted all existing laws of Virginia, and the Virginia statute of 1776 (9 Hening's St. at Large p. 127), which adopted all the appropriate English common law and statutes in force in 1607. Adams v. Clark, 189 Ky. 279, 282, 224 S. W. 1046. The statute, in spite of its general terms, does not reach merely personal covenants, and it was not necessary as to those which at common law ran with the land. The question how a covenant should be classified is in every case a question dependent on the intent to be inferred from the language of the instrument with the aid of settled rules of construction, and this covenant is clearly, in our judgment, of the class which has no invariable character, but is to be judged by its attendant circumstances.

[2] There are provisions in this same leasing contract which strongly imply a dependence upon the personality of the original party to the

such intention within ten days after the final termination of any litigation having for its object the cancellation of said lease.

"11. The $50,000 as first payment shall be paid by party of second part as soon as he obtains legal possession of said property, and simultaneously, a deed of conveyance shall be executed by party of first part and the notes herein provided for shall at the same time be executed."

contracts, as, for example, the agreement not to use the theater for performances objectionable to the lessor, and the agreement to let the lessor use it a certain number of days in the year for Masonic meetings; but it does not follow that all the provisions have this character. We see no reason for assuming any intent that the right of cancellation is exhausted whenever one conveyance of the fee has been made. An outstanding lease is an incumbrance. Every time the question of sale successively arises, the proposed purchaser may buy or not according as he may or may not be able to get possession; the provision that, in that event, the lease may be canceled upon the payment of an agreed consideration is one in derogation of that restraint of alienation which is created by the lease, and therefore operates in aid of free alienation; the first purchaser and each successive purchaser may very likely be induced to buy by the provision that, whenever he decides to sell, he can free himself from the lease. The cancellation clause is in substance an agreement by the lessee that he will sell his leasehold rights at any time during the possible ten-year period, and for a sliding scale price, carefully and fairly fixed according to the extent of the term which he is selling. A construction which would destroy this contract of sale as soon as there had been one transfer of the fee would be unnatural, and could be justified only by plain words. It is quite apparent that personal confidence is not reposed in the original lessor on this subject, because, if it should come to a sale of the fee, the cancellation of the lease would not depend upon the lessor's wishes, but upon those of his vendee, and who this might be the lessee could have no idea. We have no doubt that this covenant was one of which any grantee, succeeding to the title of the lessor, could take advantage, and there is substantial authority to that effect. Hadley v. Bernero, 97 Mo. App. 314, 322, 71 S. W. 451; Roberts v. McPherson, 62 N. J. Law, 165, 40 Atl. 630; McClung v. McPherson, 47 Or. 73, 81, 81 Pac. 567, 82 Pac. 13; Bambord v. Hayley, 12 East, 464, 468.

We find no case in Kentucky precisely in point, but our conclusion is inferentially supported by Ventura Co. v. Pabst Co. (Ky.) 109 S. W. 354. A generally contrary conclusion is reached in McClintock v. Loveless, 5 Pa. Dist. R. 417, and in Bruder v. Crafts Co., 79 Misc. Rep. 88, 139 N. Y. Supp. 307. In each of these cases, the right of the landlord to cancel was arbitrary. In the McClintock Case, he could cancel at his pleasure and without paying anything; in the Bruder Case, he could cancel if he made a sale, but he paid nothing except to return one month's rent. In the present case, if he cancels, he must repay the agreed value of the unexpired term, running from $10,000, for the longest cancellation, down to $2,000, for the shortest period. It is plain that we may well draw an inference of personal confidence in the existing landlord, when we find him given the power of canceling without paying for the privilege, which we could not draw in a case where the landlord exercising the privilege is required to pay a substantial sum; and these two cases could well be distinguished for this reason, even if they should not be regarded running counter to the prevailing rule.

[3] 2. Did the covenant contemplate money damages only? We have thought it the proper inference from the facts of such a situation that the intent was to make sure that a purchaser who wanted immediate possession could get it; and, plainly, mere money damages would not satisfy this theory of intent. It seems clear to us that the covenant must be construed as a contingent limitation of the term. In Dennison v. Read, 3 Dana (Ky.) 586, as in the other Kentucky cases cited to the same effect, the holding that the covenants were not such that a breach would limit the term was because no right of re-entry was given; but, where the covenant expressly provides for the ending of the term, no provision for re-entry is now necessary. The Kentucky forcible detainer statute supplies its place. Section 2295, Ky. St.; section 452, subd. 3, Civ. Code Ky.

[4] 3. Was the Flexner contract a "bona fide sale"? It is contended that the contract was no more than an option given to Flexner, and that, if this dispossession proceeding is successful, Flexner may then forfeit his deposit and go free. It is not to be doubted that, if the contract is of this character, it does not constitute such a sale as the cancellation clause contemplated. On the other side, it is contended that the deposit of the forfeit check was only by way of security, and that, whenever the Home becomes assured of getting free of the lease, it is entitled to specific performance against Flexner. The express provision that the vendee in a land contract will pay damages, if he does not keep his bargain, is only an express statement of what the law implies; and it could only be in a clear case of intent to give the vendee the choice between paying damages and taking of property that specific performance would be denied. Kettering v. Eastlack, 130 Iowa, 498, 107 N. W. 177, 8 Ann. Cas. 357.

[5] We do not think it necessary to follow the opposing views of counsel in their discussion of authorities as to this matter of construction, and we assume—only for the purposes of the opinion—that the contract should be classified as an option given to Flexner; but that assumption will not help the Theater Company. If Flexner originally had an option either to take the property or to refuse, he has exercised it by his conduct in this proceeding. Indeed, it is difficult to see how the provisions of the contract which require him to proceed at his expense to get possession could be reconciled with any supposed intent that he could choose between taking the property and rejecting it. However that might be, he has followed out the contract on this subject. He has joined with the Home, as plaintiff, in bringing this dispossession action, and he has joined in conducting these proceedings—in the court below and in this court—and, presumptively, has controlled them. Surely this course of conduct is inconsistent with any reserved right to abandon the property, thereby upsetting everything that he has done and is doing. The facts present the typical case of election between inconsistent remedies. No court would permit him, in an action brought against him under the contract, to stultify himself by saying that he was not bound to take the property. The theory that he is bound, and that, because he is bound, there has been a bona fide sale, lies at the basis of this dispossession proceeding, and that theory Flex-

ner has been and is propounding as the basis of relief which he joins in seeking. We have no hesitation in holding that, whatever the original obligation of Flexner may have been, he became at once, on beginning and prosecuting this proceeding, absolutely bound to take the property and pay for it, and cannot deny his liability to specific performance.

Nor do we think the provision of the contract, that Flexner's ultimate liability should be contingent on his getting possession, gave the contract any character inconsistent with that of sale. It was a natural and reasonable provision. No purchaser who wanted possession would buy, excepting under some such arrangement, and to permit the Theater Company to say that it need not give possession unless there is a sale, and that there is no sale because it will not give possession, is to defeat the purpose of the contract.

4. The final order of the court below was that the writ of possession issue upon the payment into court of $8,000 for the use and benefit of the Theater Company, "if it shall finally be adjudged to be entitled thereto." The Theater Company asks that this direction for payment should be made absolute, leaving nothing open for litigation. The plaintiff tendered this sum and the tender should be kept good. No uncertainty as to the payment of this money to the Theater Company should remain. The order should be that if, within some short time to be fixed by the court, this sum of money be paid into court for the use and benefit of the Theater Company, the writ of possession issue, and the money be paid over to the Theater Company, and that, in default of such payment within the time fixed as limited or as extended, the proceeding be dismissed. The final order below is vacated, but only for the purpose of being re-entered as modified in the particular specified.

Since there is nothing to indicate any serious danger of prejudice to the Theater Company by the form of the order as entered below, the costs of this court will be awarded as if on affirmance.