Jordan's Adm'r v. Cincinnati, New Orleans & Texas Pacific R. R. Co.

stances we have alluded to, had a right, by reason of the silence of his vendor, to consider, as he undoubtedly did, that the ice passed to him with the freehold. It was the duty of the vendor to speak. The property was being purchased for hotel purposes. The season for gathering ice had passed; and the purchaser, seeing the ice in the ice-house at that time of year, would naturally conclude that it would pass with the property for use in the intended business, and as almost indispensably necessary to it. It must be regarded by the intention of the parties as connected with the particular business to be carried on upon the premises, and that it, therefore, was understood and intended by the parties as passing by the conveyance of the freehold.

The action of the lower court conformed to this view, and the judgment is affirmed.

CASE 8—PETITION ORDINARY—JUNE 21.

# Jordan's Adm'r v. Cincinnati, New Orleans & Texas Pacific Railroad Company.

APPEAL FROM KENTON CIRCUIT COURT.

DEATH BY WILLFUL NEGLECT—WHO MAY SUE UNDER STATUTE.—The word "heir," as used in section 3, chapter 57, General Statutes, was intended to mean child, and, therefore, the widow and children of a person whose life has been destroyed by willful neglect have the prior right to bring the action authorized by that statute, and the exclusive right to what may be recovered in such an action; and, consequently, the alternative right of action given to the personal representative can be exercised only for their use and benefit.

This action was brought by the administrator to recover for the

**VOL. 89.]** **JANUARY TERM, 1889.** **41**

Jordan's Adm'r v. Cincinnati, New Orleans & Texas Pacific R. R. Co.

destruction of the life of his intestate by the willful neglect of defendant, the intestate being in the employment of defendant. The answer pleaded in bar of recovery that deceased left no widow or child, to which, as reply, it was stated he left as heirs a father, mother, sister and brother. *Held*—That the court did right in overruling a demurrer to the answer, in sustaining a demurrer to the reply, and dismissing the petition.

CLEARY & HAMILTON FOR APPELLANT.

The personal representative may recover under section 3 of chapter 57, General Statutes, although there is neither widow nor child.

The intention of the Legislature must prevail, and that intention must be ascertained by the canon of construction provided by section 17 of chapter 21, General Statutes. Therefore, the word " heir " must be given the peculiar and appropriate meaning which it has acquired in the law. It is not necessary to construe the word to mean " child " in order to make the General Statutes a harmonious system of laws. The very use of the word *heir* in this law, and *minor child* or *children* in other statutes giving a right of action where one has been killed by another, shows the legislative intent.

C. B. SIMRALL FOR APPELLEE.

1. Where there is neither widow nor child there can be no recovery by the personal representative under section 3 of chapter 57, General Statutes. (Henderson's Adm'r v. Ky. Cent. R. R. Co., 9 Ky. Law Rep., 625; Lou. & Nash. R. R. Co. v. Coppage, 10 Ky. Law Rep., 193; L. C. R'y Co. v. Kayse, 10 Ky. Law Rep., 321.)

2. The principles of law determined by the Henderson case are sound, and are sustained both by reason and authority.

No right of action accrued at common law for injuries resulting in death. (Eden v. L. & F. R. Co., 14 B. M., 205; Covington St. R'y Co. v. Packer, 9 Bush, 455; Hansford v. Payne, 11 Bush, 380.) This was changed in England by Lord Campbell's act, 9 and 10 Vict., chap. 93, and Kentucky followed this act in chap. 57, Gen. Stats., secs. 1 and 3.

Under section 1 of chapter 57 only compensatory damages are recoverable. (L., C. & L. R. Co. v. Case's Adm'r, 9 Bush, 728; Ky. C. R. Co. v. Gastineau's Adm'r, 83 Ky., 119.)

" Compensation " defined (Parker v. Jenkins, 3 Bush, 591).

While the jury are permitted to give exemplary damages under section 3, the damages are allowed as compensation for the loss sustained; and those only are entitled to punitive damages who could legally recover compensatory damages. (Chiles v. Drake, 2 Met., 147; L. & N. R. Co. v. Brooks, 83 Ky., 129.)

To entitle a person to recover compensatory damages for the loss of the life of another, he must have had a legal expectation of pecuniary benefit to arise from the continuance of the life. (Duckworth v. Johnson, 9 Weekly Rep., p. 655; 4 H. & N., 653; Franklin v. S. E. R'y Co., 6 Weekly Rep., 573; 3 H. & N., 211; Dalton v. S. E. R'y Co., 8 Weekly Rep., 574; Sykes v. N. E. R'y Co., 44 Law Journal, 91; 23 Weekly Rep., 473; Holleran v. Bagnell, 6 Law Rep., Ireland (C. P. Div.), p. 333; Harrison v. London & N. W. R'y Co., 1 Cobabe & Ellis (Q. B.), 540.)

The widow and child alone could have had such pecuniary expectations, and, therefore, the court was right in construing the word "heir," as used in the statute, to mean "child," especially as other statutes giving a right of action against one person for the killing of another limit the right of action to the widow and minor children of the person killed.

·CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

This is an action by appellant, administrator, to recover for destruction of the life of James Jordan, by alleged willful neglect of servants of appellee, deceased being at the time employed as engineer on one of its trains.

In the answer it was pleaded in bar of recovery that deceased left no widow or child, to which, as reply, it was stated, he left as heirs a father, mother, sister and brother; but a general demurrer to the answer having been overruled, while that to the reply was sustained, the action was dismissed.

There is thus presented the same question that was made in the case of Henderson's Adm'r v. Ky. C. R. Co., 86 Ky., 389, decided in December, 1887, where it was held the word heir, as used in section 3, chapter 57, General Statutes, was intended to mean child; that the widow and children of a person, whose life is destroyed by willful neglect, have the prior right to sue for and exclusive right to what may be recovered in an action

thereby authorized; and, consequently, the alternative right of action given to the personal representative can be exercised only for their use and benefit. But, as counsel in this and other pending cases requiring construction of that section, have, with much ability and earnestness, in both oral and written arguments, insisted the opinion in that case should be overruled, we will again consider the question ; and, if convinced of error, correct it.

Remedy. by civil action for the death of a human being was not allowed by the common law, and now exists in this State in virtue alone of statutory enactment. The first innovation in that respect was a. statute of England, adopted in 1846, called Lord Campbell's act, which has been followed by statutes on the same subject in most, if not all the States of the United States. It is, therefore, useful to refer to that statute, and the construction given to it by English courts, as showing the reason for its adoption, and the principle upon which damages are assessed under it.

The title of it is " An act for the purpose of compensating *families* of persons killed by accidents," and its provisions are, in substance, as follows :

1. An action is maintainable against a person causing death through wrongful act, neglect or default, although the death was caused under such circumstances as amount to a *felony*.

2. The action is for the benefit of the wife, husband, parent, child, and, by construction, grand-parent, step-parent, grand-child, step-child, to be brought in the name of the personal representative, and the amount recovered to be divided among the parties, as the jury may direct.

3. The plaintiff is to give to the defendant full particulars of persons for whose benefit the action is brought.

In Blake v. Midland R. Co., 18 Q. B., 93, 21 Law J., 233, it was held that damages are to be assessed under that statute, merely as compensation for the pecuniary and actual injury sustained ; not as solation for mental anguish of, or loss of companionship of a relative by the survivors ; nor for the suffering of the deceased. In Duckworth v. Johnson, 4 H. & N., 653, 29 Law J., Exch., 25, it was held that though negligence exists, an action cannot be maintained if there was no actual damage. In Bush v. Cork R. Co., C. & J., 48, it was said that such damages must be given in reference solely to pecuniary loss, which, however, may be evidenced by proof of a reasonable expectation of pecuniary benefit, as of right or otherwise, from continuance of the life ; but, although given in respect of that expectation being disappointed, and of the probable pecuniary loss thereby occasioned, there must be something in the facts of the case to warrant such expectation. The same rule was approved in Franklin v. S. E. R. Co., 3 H. & N., 211, and in Dalton v. S. E. R. Co., 8 Weekly Rep., 574. But the pecuniary loss to be compensated for may consist, in case of a child, of loss of anticipated benefit of education and support (Pym v. G. N. R. Co., Fost. & F., 619, 2 Best & S., 759) ; and, we think, for like reason in case of a widow of loss of her husband's care, protection and support.

It will be observed the statute, in express terms, provides that actions can be maintained for the use of lineal kindred of the deceased only, except as to step-

parents and step-children; or, in the language of the title, for compensation of "families," collateral relatives being, in no case, allowed any part of what may be recovered. And it seems to be well settled by English courts that there can be no recovery under it, even for the use of beneficiaries named therein, unless it appears, from proof, they have sustained actual pecuniary loss by the death.

The first one of such statutes was adopted in this State in 1851 as part of the Revised Statutes, chapter 31, section 1, as follows: "That the widow and *minor child* of a person killed in a duel, or either of them, may have an action against the surviving principal, the seconds, and all others aiding or promoting the duel, or against any one or more of them, for reparation of the injury, and in which the jury may give vindictive damages for the suppression of the practice of dueling."

April 10, 1854, "An act for the *redress* of injuries from neglect or misconduct of railroad companies and others," was adopted, the first and third sections of which are as follows:

"SECTION. 1. That if the life of any person, not in the employment of a railroad company, shall be lost, by reason of negligence or carelessness of the proprietor or proprietors of any railroad, or by the unfitness or negligence or carelessness of their servants or agents in this State, the personal representative of the person whose life is so lost may institute suit and recover damages in the same manner that the person himself might have done for any injury, when death did not ensue."

"SECTION 3. That if the life of any person is lost or destroyed by the willful neglect of another *person or persons*, company or companies, corporation or corporations, their agents or servants, then the *personal representative* of the deceased shall have the right to sue such *person or persons*, company or companies, corporation or corporations, and recover punitive damages for the loss of life aforesaid."

In 1866, "An act to prevent the careless and wanton or malicious use of deadly weapons" was passed (see Myers' Sup., 681), the first section providing: "That the *widow and minor* children, or either or any of them, of a person killed by the careless or wanton or malicious use of fire-arms, or other deadly weapon, not in self-defense, may have an action against the person or persons who committed the killing, or any one or more of them, for reparation of the injury; and, in such action, the jury may give vindictive damages."

Though the three statutes just mentioned were enacted at different dates, each one of them was embodied in and made part of the General Statutes, adopted by an act approved April 22, 1873, the first and third, without any change, becoming respectively section 6, chapter 1 and chapter 32 thereof, while sections 1 and 3 of the act of 1854 are identical with corresponding sections of chapter 57, except section 3 was so amended as to give the right of action to "the widow, heir or personal representative," instead of restricting it, as was done by the original act, to the personal representative alone.

The statutes of the several States, though modeled after and having the same general features as the Eng-

VOL. 89.]　　JANUARY TERM, 1889.　　47

Jordan's Adm'r v. Cincinnati, New Orleans & Texas Pacific R. R. Co.

lish statute, vary greatly in details. Most of them, like it, give right of action exclusively to the personal representative, and for destruction of life, whether caused by negligence or a wrongful act that may be a felony and punishable as such. Some of them provide that the amount recovered shall go to the widow and next of kin ; some, it shall go to the widow and children only ; some, that lineal kindred shall be entitled to it; and others, that it shall either go to the heirs or be distributed as other personal estate of an intestate.

The rule laid down in the leading case of Blake v. Midland R. Co. seems to have been generally approved in the United States, except that it has been held by some of the courts that pecuniary damage will be presumed in the case of an action for the benefit of a widow and children (Dunhene v. Ohio Trust Co., 1 Disney, 257), and likewise in actions for benefit of parents in States where they are allowed (Chicago v. Scholten, 75 Ill., 468 ; McGovern v. New York R. Co., 67 N. Y., 417). But some courts have held that neither husband nor wife is, at law, "next of kin" to the other (Townsend v. Radcliff, 44 Ill., 446 ; Lucas v. New York R. Co., 21 Barb., 245), while, according to others "next of kin" embraces all relatives who have suffered pecuniary damage by the death (Dunhene v. Ohio Trust Co.) However, we do not deem it necessary to refer at length to the construction that has been given to statutes of other States, as they, with some exceptions, differ materially from section 3, chapter 57, General Statutes. For it will be observed that section is unlike them, as well as the English statute, in the following particulars :

1. In none of them is the right to maintain the action given to the widow and heir.

2. The cause of action provided by section 3 is for destruction of life by willful neglect only.

3. In no other statute is the right to recover punitive damages in express terms given.

4. Unlike some other statutes, section 3 gives the right to sue persons, as well as companies, for the cause therein mentioned.

It, therefore, results, that in order to determine the intended meaning and scope of that section, it is necessary to look first to the reason and purpose of its enactment, and then treating it as part of a system or code of laws, which the General Statutes certainly was designed to be, to consider and compare it with other parts relating to the same subject, and acting upon the same system ; for "it is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions." (1 Kent's Com., 463.) "The right to damages constituting a legal cause of action requires the concurrence of two things : that the party claiming them has suffered an injury, and that there be some other person who is legally answerable for having caused it." (1 Sutherland on Damages, 3.) No person has a legal cause of action against another for a wrongful or negligent act, and it may be safely said legislative power to give it does not exist, unless he has sustained pecuniary injury by it. For the foundation of every action for a tort is actual pecuniary injury, without which there can be legally assessed neither compensatory nor punitive damages.

It seems to us clear it was not intended that creditors of the deceased should have any part of what may be

recovered under section 3, chapter 57, and that the personal representative can maintain an action for the cause therein mentioned only for the use of the widow and heir, for otherwise the act of 1854 would not have been so amended as to give to them the right to sue for and recover damages. As, then, the widow is entitled to maintain such action, and, as a necessary consequence, to share with the heir what is recovered, the single question to be determined is, what meaning the Legislature intended to be given to the word "heir," as therein used. It must be either so limited as to mean child; or so extended as to include collateral kindred of the deceased, however remote, if it can be fairly applied to them at all; for the right to sue for and recover punitive, which presupposes also compensatory damages, is given by the statute without condition or qualification.

When the life of a person is lost or destroyed, rarely is there an inquiry how much collateral relatives have been pecuniarily injured thereby, but the suggestion immediately forces itself on every one cognizant of the occurrence, that the widow and children have suffered loss, for, as said in the Henderson case, "no others sustain as near relation to, are so dependent upon, or have the same legal right to look for a support to a person, as his wife and children, especially those of the latter who are minors."

On the other hand, to apply and give the word "heir" the comprehensive meaning contended for would often defeat the beneficent purpose of the statute, and in many cases, where there is a widow but no children, take from her who is injured two-thirds of the

amount recovered, and transfer it to distant collateral relatives, who have sustained no pecuniary loss or injury whatever. It seems to us no such meaning or effect was intended by the Legislature to be given to that section.

We have been referred to section 17, chapter 21, General Statutes, which provides "that all words and phrases shall be construed and understood according to common and approved usage of language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such meaning."

The word "heir" can not, according to its "peculiar and appropriate meaning in the law," be used in relation to damages recoverable under the section, being applicable to real estate of inheritance, and not to personalty. It must, therefore, be interpreted to mean either distributee or child. To make it mean distributee would, it seems to us, be contrary to the reason and purpose of the law, which was intended to give redress, reparation or compensation to those only who are injured pecuniarily by the loss or destruction of the life of husband and father. But to make it the synonym of child, which is often done, would preserve the harmony and consistency of the General Statutes, and accord with legislative policy and intention clearly indicated in the other two statutes on the same subject. And as "we are unable to perceive any reason for giving to the widow and minor child the exclusive right to sue for and recover damages for the loss of life of a person in a duel, or by the careless or malicious use of fire-arms,

that does not apply with equal force when it is destroyed by willful neglect," we must adopt it as a reasonable and necessary conclusion the Legislature intended the three statutes on the subject to be construed together and alike.

It is true the construction given in the Henderson case deprives parents of the right to sue and recover for destruction of the life of a child by willful neglect. But to give the right to them necessarily involves giving to the word heir the signification of distributee and the extension of the same right to collateral kindred of the remotest degree. Moreover, parents are expressly excluded from recovering when the life is lost in a duel, or by the malicious or wanton use of fire-arms or other deadly weapons; and while we see no reason for denying the right of action by parents under either of the three statutes, there is no more reason for giving it in one case than in the others, and it is, therefore, a reasonable inference the Legislature intended to allow it in neither.

Though cases have been decided by this court where actions were brought under section 3, chapter 57, the question involved in the Henderson case was the first time, since adoption of the General Statutes, then directly made and passed on, and, consequently, the decision in that case did not require overruling of any previous case. Besides, as the opinion in the Henderson case was delivered during a session of the General Assembly, and no change was made in the law extending the right to others than those then held by this court entitled to what may be recovered under it—and we are satisfied that opinion was correct—it must be adhered to, and the judgment of the lower court in this case affirmed.