560 KENTUCKY REPORTS. [VOL. 90.

Louisville and Nashville Railroad Company v. Coniff's Adm'r.

CASE 88—PETITION ORDINARY—OCTOBER 18.

# Louisville and Nashville Railroad Company v. Coniff's Adm'r.

### APPEAL FROM MARION CIRCUIT COURT.

1. RAILROADS—SURVIVOR OF ACTIONS.—When an employe of a railroad company is injured by the gross or willful neglect of the company, and death ensues, his personal representative may maintain an action for the mental and bodily suffering of the decedent during the period intervening between the time of the injury and the death; but there can be no recovery by the personal representative if the neglect was merely ordinary. For this degree of neglect the employe himself would have had no right of action if he had survived the injury, and, therefore, no right survives to the personal representative.

2. SAME—NEGLIGENCE.—The fact that the conductor and engineer of a train moving slowly in a switch-yard were both off the train did not constitute negligence as to a yard employe, who, by reason of the spreading of the rails, was struck and killed by a lever used by switchmen to shift the cars from one track to another. The fireman and brakeman who were left in charge of the train being competent to manage it, and there being no negligence on their part, the company is not liable.

WM. LINDSAY, W. J. LISLE FOR APPELLANT.

Plaintiff can not maintain this action, as there is nothing to show that his intestate left either widow or child. (Henderson's Adm'r v. Ky. C. R. Co., 9 Ky. Law Rep., 625; L. & N. R. Co. v. Sanders, *Ibid*, 690.)

EDWARD J. McDERMOTT FOR APPELLEE.

1. The statute is general in its terms and scope. If this particular representative has no right to sue, his incapacity to sue must be shown by answer. (Gen. Stats., chap. 57, sec. 3; Stephen on Pleading, star pages 350, 443; Jones v. Aken, 1 Lord Kaym, 120.)

2. Even if it appeared that Pat Coniff left neither widow nor child, his administrator could maintain this action. If a statute is plain there is no room for construction. (Bosely v. Mattingly, 14 B. M., 89; Fischer v. Blight, 2 Cranch, 358, 399; James v. Patten, 2 Seld., 9; King v. Inhabs. of Stoke Damerd, 7 Barn. & Cres., 563, 568; King v. Inhabs. Ramsgate, 6 Barn. & Cres., 712, 715; Green v. Wood, 7 Q. B., 178; Newell v. The People, 3 Seld., 97; Cartwell v. Owens, 14 Md., 215.)

Louisville and Nashville Railroad Company v. Coniff's Adm'r.

A long continued practice under a statute ripens into an authoritative construction. (Harrison v. Commonwealth, 7 Ky. Law Rep., 74; Lou. & Ev. Mail Co. v. Barbour, 8 Ky. Law Rep., 436; King v. John Younger, 5 Term R., 449.)

For thirty-four years this court and the members of our bar have had no doubt of the right of a representative to sue under the act of March 10, 1854, and section 3 of chapter 57, General Statutes, without reference to whether the decedent left widow or child. (Chiles v. Drake, 2 Met., 146; Filbern's Adm'r, 6 Bush, 574; Mahoney, Adm'r, 7 Bush, 235; Sullivan's Adm'r, 9 Bush, 83; Murphy's Adm'r, 9 Bush, 522; Caven's Adm'r, 9 Bush, 559; Case's Adm'r, 9 Bush, 728; City of Lex. v. Lewis, Adm'r, 10 Bush, 677; Jacob's Adm'r, 10 Bush, 263; Board Int. Imp. Shelby Co. v. Scearce, 2 Duv., 579; Claxton's Adm'r v. Lex. & B. S. R. Co., 13 Bush, 636; Conner's Adm'r v. Paul, 12 Bush, 144; Bransom's Adm'r v. Labrot & Graham, 5 Ky. L. R., 827; L. & N. R. Co. v. Brooks' Adm'r, 5 Ky. Law Rep., 750; Jones' Adm'r v. L. & N. R. Co., 6 Ky. Law Rep., 694; Morgan v. Thompson, 82 Ky., 385; L. & N. R. Co. v. Brooks' Adm'r, 7 Ky. Law Rep., 115; L. & N. R. Co. v. Brice, 8 Ky. Law Rep., 272; Roundtree v. Stephens, 8 Ky. Law Rep., 433; Kitt's Adm'r v. L. & N. R. Co., 9 Ky. Law Rep., 307; Nichols' Adm'r v. L. & N. R. Co., 9 Ky. Law Rep., 702; O'Bannon's Adm'r v. L. & N. R. Co., 9 Ky. Law Rep., 706; Ky. Cent. R. Co. v. Gastineau's Adm'r, 7 Ky. Law Rep., 7.)

The change made in 1873 in the phraseology of the statute was not intended to restrict its scope. A mere change in the phraseology of the statute will not be deemed to alter the law unless it evidently appears such was the intention of the Legislature. (Sedgwick on Con. St. and Con. Law (2d ed.), p. 197; Overfield v. Sutton, 1 Met., 621.)

Acts in derogation of the common law are to be liberally construed; and technical words and phrases in statutes are to be understood according to their peculiar and appropriate meaning in the law. (Gen. Stats., chap. 21, secs. 16, 17; Sedgwick, p. 219; U. S. v. Jones, 3 Wash. C. C. R., 209.)

3. As to construction of statutes in other States similar to section 3 of chapter 57, General Statutes: Oldfield v. N. Y. & Harlem R. Co., 3 E. D. Smith, 103; Penn. R. Co. v. McCloskey's Adm'r, 23 Penn. St., 531; Dickens' Adm'r v. N. Y. C. R. Co., 28 Barb., 41; Railroad Co. v. Barron, 5 Wall., 90.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The action in this case seems to have been instituted for the purpose of recovering damages, not only for

the killing of the deceased, as authorized by the stat-
ute, but to recover for the pain and suffering of the
intestate during the time intervening between the in-
fliction of the injury and the death.

In the case of Jordan's Adm'r v. Cincinnati, &c.,
R. Co., 89 Ky., 40, and in numerous other cases, it
has been held that no recovery can be had for the
loss of life where the person killed leaves no widow,
child or children, and for that reason it is no doubt
sought to recover for the mental and bodily suffer-
ing of the intestate prior to his death.

In the case of Cincinnati, &c., R. Co. v. Adams'
Adm'r, 11 Ky. Law Rep., 833, decided at the last
term, it was held, in effect, that where one in the
employment of a railroad company, while in the same
grade of service, loses his life by the neglect of a
co-employe in the same hand-car at the time the
injury was sustained, that no cause of action exists
for the loss of life, or any other injury caused by
the one employe to the other. This and nothing more
was decided in that case, the party causing the injury
and the one killed being in the performance of the
same service.

Section 1 of chapter 57, General Statutes, provides
that "if the life of any person not in the employment
of a railroad company shall be lost in this Common-
wealth by reason of the negligence or carelessness of the
proprietor or proprietors of any railroad, or by the un-
fitness or negligence or carelessness of their servants or
agents, the personal representative of the person whose
life is lost may institute suit, and recover damages in
the same manner that the person himself might have
done for any injury where death did not ensue."

It necessarily follows that the cause of action did not survive to the personal representative in this case unless the injury was the result of gross or willful neglect. Section one applies to those not in the employ of the company, and to recover where one dies from an injury caused by neglect on the part of the company while in its employ, the personal representative must allege and establish gross or willful neglect, and there can be no recovery for mere ordinary neglect. The intestate could have only recovered for gross or willful neglect if he had survived the injury, and his personal representative can do no more. The question in this case is, has the personal representative made out a case of gross or willful neglect?

The appellee's intestate was injured, as is alleged, by the negligence of the defendant in so operating its cars as to cause a lever, used by switchmen to shift the cars from one track to the other, to strike the intestate in the abdomen, causing his death. The intestate was in the employ of the company in the switch-yard of the defendant at the time of the injury, and it was his duty to protect rear cars in backing, or in going from the one track to the other. How he happened to be at the place where he received the injury does not appear, as the uncontradicted testimony shows that the rails of the one track did not need changing at the time in order to enable the cars to go upon another track. We shall assume that his action was in the discharge of his duty, and that the facts show when near the lever the train, moving back at the rate of three or four miles an hour, by spreading the rails, caused the lever to strike the unfortunate

man. It seems that the machinery with which the
lever is connected was unlocked, or had been tam-
pered with, and it may be that the intestate was
attempting to properly adjust it when the accident
happened. The engineer had gone to perform a call
of nature at the time, but the train was being moved
by one in the employ of the company on the train
entirely competent to manage it. The conductor was
attending the loading of some cars. There was noth-
ing unusual in the movements of the train, or any
reason to suspect danger, still the young man happened
to be near enough for the lever to strike him, and we
have failed to see any proof showing either gross or
willful neglect, or even ordinary neglect, on the part
of the company causing the loss of· this young man's
life.

His brother gives, in detail, all that occurred at
the time, making a plain, honest and truthful state-
ment of what transpired, and the other employes make
a·like statement, and from the testimony we can not
say that these employes are to blame in any manner
for the death of their fellow-workman. The lever or
its boxing may have been unlocked. The conductor
may have been, as he was, engaged in loading scrap
iron, and the engineer at the water-closet, still the
train was moving slowly by those competent to man-
age it. The deceased saw it moving, made his way to
the rear of the train, and when near the lever the in-
jury, as stated, occurred. No one had any reason to
believe that the machinery for shifting the cars was
out of order, or that the intestate was in a position
where he might be injured. If they saw his danger,

and failed to use proper precaution to prevent injury, the company would be responsible. The intestate, when entering the employ of the company, assumed to run the ordinary risks pertaining to the business as well as to submit to the ordinary and usual mode of conducting trains by those in charge. The fact that the conductor was loading iron, and the engineer off the train, did not amount to willful, gross or ordinary neglect if those on the train, the fireman and brakeman, were moving it in the usual manner. They were not guilty of neglect, and the intestate, entering the service of the company, assumes such risks as may arise from convenience or from necessity necessary to the moving of the train, and certainly when those left in charge have not been guilty of any neglect.

The instruction given, by which the jury was told that the administrator was entitled to compensation for the loss of the intestate's life, should have been refused. Nor should the jury have been told that the company was liable if those moving the train knew, or by ordinary attention could have known, the danger, because not authorized by the facts proven. There is no evidence showing that the train was improperly managed, or that those in charge of it could have, by either ordinary or extraordinary care, avoided the injury. We can not, of course, anticipate the testimony that will be offered on another trial, but this judgment must be reversed, and is remanded for a new trial in conformity with this opinion.