J. Denis GIULIANI, Administrator of the Estate of Mary K. Giuliani, Deceased; J. Denis Giuliani, individually; and J. Denis Giuliani, father and next friend of James M. Giuliani, an infant; Katherine M. Giuliani, an infant; Mary K. Giuliani, an infant; and David M. Giuliani, an infant, Appellants,

v.

Michael GUILER, M.D.; Baptist Health Care Systems, Inc., d/b/a Central Baptist Hospital; Richard Bennett, M.D.; Velma M. Taormina, M.D.; University of Kentucky Medical Center Residents Training Program, Appellees.

No. 95–SC–1004–DG.

Supreme Court of Kentucky.

June 19, 1997.

As Modified on Denial of Rehearing Oct. 2, 1997.

Ann B. Oldfather, Jennifer J. Hall, Oldfather & Morris, Louisville, for Appellants.

David C. Trimble, Newberry, Hargrove & Rambicure, PSC, Wilbur T. Adkins, Ronald L. Green, Boehl, Stopher, Graves & Deindoerfer, Kenneth W. Smith, Stites & Harbison, William J. Gallion, Gallion, Baker & Bray, P.S.C., Lexington, for Appellees.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which affirmed the circuit court judgment denying the four minor children of Mary K. Giuliani, deceased, who died during childbirth, a claim for loss of parental consortium for the loss of love, affection, guidance, care, comfort and protection of their mother.

The question presented is whether this Court should overrule previous decisions of this Court and recognize the right of a minor child for the loss of parental consortium.

Mary K. Giuliani, age 33, died during the birth of her fourth child. Her other children were 9, 7 and 3 years of age respectively. Their father filed a claim for wrongful death as administrator, his own claim for loss of consortium and a claim for loss of consortium as next friend for each of the four minor children. The principal wrongful death case

is still in the discovery stage at the circuit court level. The trial judge dismissed the claim for loss of consortium of the three minor children in a one-page partial summary judgment. The Court of Appeals affirmed the dismissal but invited this Court to revisit the question of parental consortium. Both the circuit court and the Court of Appeals indicated a constraint on them as a result of the case of *Brooks v. Burkeen*, Ky., 549 S.W.2d 91 (1977). Later, *Adams v. Miller*, Ky., 908 S.W.2d 112 (1995), also refused to recognize such a claim on the basis that no other legislature or court had done so. The Court of Appeals stated in its opinion denying the claim that "We can only encourage our Supreme Court to revisit this issue in the light of modern developments in this area of the law." This Court accepted discretionary review.

Dr. Guiler was the obstetrician but was not present at the time of delivery. He instructed the nurses at the hospital to induce labor. After seeing Mary at 6 p.m., the doctor decided he was not needed and left for dinner at the home of a friend. The record indicates that the nurses apparently became more concerned about the situation and unsuccessfully attempted to reach the doctor by numerous calls. Ultimately, Dr. Bennett, an anesthesiologist, an obstetric resident and members of the CODE team, none of whom were familiar with the case, attempted to aid the mother. The mother suffered a cardiac and respiratory collapse shortly after the child's birth and died.

Kentucky currently recognizes loss of consortium claims between husband and wife and the claim of a parent for the loss of the child's affection and companionship upon the death of a child. The question presented here is whether this Court should now recognize a child's loss of parental consortium as well. The Giuliani children through counsel argue that the loss of the parent's love and affection is devastating to any child. Children should be able to bring a loss of consortium claim to recover from the wrongdoer whose negligent acts have caused the harm. Such a cause of action does not currently exist in Kentucky but it should. The loss of consortium is a judge-made common law doctrine which this Court has the power and duty to modify and conform to the changing conditions of our society. When the common law is out of step with the times, this Court has a responsibility to change that law. Development of the common law is a judicial function and should not be confused with the expression of public policy by the legislature.

Kentucky has recognized the changing nature of the parent-child relationship and the importance of children to the family. The legislature has made it the express public policy of the Commonwealth to protect and care for children in a nurturing home. KRS 600.010. It has also recognized the individuality of the child and the value to a family by providing parents a consortium claim for the loss of the love and affection of their child. KRS 411.135. It is a natural development of the common law to recognize the need for a remedy for those children who lose the love and affection of their parents due to the negligence of another. It is necessary for this Court to conform the common law so as to provide a remedy for loss of consortium for children and to decline to "perpetrate an anachronistic and sterile view of the relationship between parents and children." *Gallimore v. Children's Hospital Medical Center*, Ohio, 67 Ohio St.3d 244, 617 N.E.2d 1052 (1993).

This Court fully understands and appreciates that the trial court and the intermediate appellate court were not at liberty to recognize the loss of parental consortium resulting from the mother's death because of the *Brooks, supra*, case. Later, *Adams, supra*, followed *Brooks* in refusing to recognize the loss of parental consortium solely because "no court or legislature in the United States has yet seen fit to recognize such action."

The premise for the *Brooks* rationale no longer exists. Since 1977, when *Brooks* was decided, 15 courts and two state legislatures have recognized the claim of children for loss of parental consortium. The trend towards recognition of the claim can be found in the following cases: *Ferriter v. Daniel O'Connell's Sons, Inc.*, Mass., 381 Mass. 507, 413 N.E.2d 690 (1980); *Berger v. Weber*, Mich., 411 Mich. 1, 303 N.W.2d 424 (1981); *Audubon–Exira v. Illinois Central Gulf Railroad*

*Co.*, Iowa, 335 N.W.2d 148 (1983); *Theama v. Kenosha*, Wisc., 117 Wis.2d 508, 344 N.W.2d 513 (1984); *Ueland v. Reynolds Metals Co.*, Wash., 103 Wash.2d 131, 691 P.2d 190 (1984); *Hay v. Medical Center Hospital of Vermont*, Vt., 145 Vt. 533, 496 A.2d 939 (1985); *Hibpshman v. Prudhoe Bay Supply, Inc.*, Alaska, 734 P.2d 991 (1987); *Villareal v. State Dept. of Transportation*, Ariz., 160 Ariz. 474, 774 P.2d 213 (1989); *Williams v. Hook*, Okl., 804 P.2d 1131 (1990); *Nulle v. Gillette–Campbell Fire Bd.*, Wyo., 797 P.2d 1171 (1990); *Belcher v. Goins*, W.Va., 184 W.Va. 395, 400 S.E.2d 830 (1990); *Reagan v. Vaughn*, Tex., 804 S.W.2d 463 (1990); *Pence v. Fox*, Mont., 248 Mont. 521, 813 P.2d 429 (1991); *Gallimore v. Children's Hosp. Medical Center, supra*, and *Romero v. Byers*, N.M., 117 N.M. 422, 872 P.2d 840 (1994), in a case in which the wrongful death statute would include loss of parental consortium. In addition, the state legislatures of Florida and Louisiana have recognized the parental consortium claim by specific statute. Six of the jurisdictions who have recognized the parental consortium claim reversed previous positions denying such claims. *See* J. Parker, *Parental Consortium: Assessing Contours of the New Tort in Town*, 64 Miss.L.J. 37 (Fall 1994).

■ The doctrine of stare decisis does not commit us to the sanctification of ancient fallacy. *Hilen v. Hays*, Ky., 673 S.W.2d 713 (1984). Stare decisis does not preclude all change. The principle does not require blind imitation of the past or adherence to a rule which is not suited to present conditions. *See Hays, supra.* The "ancient fallacy" continued by *Brooks* and *Adams* is the view that children do not have identity as individuals and as members of the family separate from their parents. This has never been true and it is long overdue that we recognize the essential personhood of each individual while giving homage and deference to their inclusion in the family. The loss suffered by each child in this case is separate and distinct from the loss of their brothers and sisters and from the loss suffered by their father.

■ Given the legislatively expressed public policy of this Commonwealth to strengthen and encourage the family for the protection and care of children, KRS 600.010, it is only logical to recognize that children have a right to be compensated for their losses when such harm has been caused to them by the wrongdoing of another. It is the purpose of all tort law to compensate one for the harm caused by another and to deter future wrongdoing. *City of Louisville v. Louisville Seed Co.*, Ky., 433 S.W.2d 638 (1968), overruled on other grounds by *Gas Service Company, Inc. v. London*, Ky., 687 S.W.2d 144 (1985). Loss of consortium is a common law cause of action. Common law grows and develops and must be adapted to meet the recognized importance of the family, and the necessity for protection by the law of the right of a child to a parent's love, care and protection so as to provide for the complete development of that child. *See Theama v. Kenosha, supra.*

This Court has the authority and responsibility to modify loss of consortium as a common law doctrine when necessary. The general claim for loss of consortium has long been recognized in a number of Kentucky precedents. E.g., *Dietzman v. Mullin*, 108 Ky. 610, 57 S.W. 247 (1900); *Kotsiris v. Ling*, Ky., 451 S.W.2d 411 (1970). Originally, at early common law, the action for loss of consortium protected only the economic interest of the husband in his wife. *Dietzman, supra.* That concept has been expanded to include the loss of a wife's companionship, security and love. In 1970, this Court expanded the cause of action for loss of consortium to allow a wife to claim for the loss of her husband's consortium. *Kotsiris, supra.* It is interesting to note that thereafter the Kentucky legislature codified the *Kotsiris* decision in KRS 411.145. In addition, recently the legislature on its own initiation recognized the loss of consortium for a parent upon the death of a child in KRS 411.135. We find the claim that recognition of the loss of parental consortium is in some way an invasion of the right of the legislature to be without merit when measured against the history following the *Kotsiris* decision. *Kotsiris* stated that changing the rule so as to provide for loss of consortium is fully within the competence of the judicial function.

Such a responsibility has long been recognized in Kentucky.

> The law is both a progressive and resourceful science, and is ever alert to accommodate itself to the constant changing circumstances and conditions of society.... [W]hen it is necessary ... to employ a remedy to fit alternate situations and conditions, it is not only proper, but it is the duty of courts to do so to the end that justice may be administered.

*Graham v. John R. Watts and Son,* 238 Ky. 96, 36 S.W.2d 859 (1931). *See also Ruby Lumber Co. v. K.V. Johnson Co.,* 299 Ky. 811, 187 S.W.2d 449 (1945).

As stated in *City of Louisville v. Chapman,* Ky., 413 S.W.2d 74 (1967):

> We do not think that the framers of our Constitution intended to shackle the hands of the judicial branch of government in its interpretation, modification or abolition of the great body of mutable common law to meet the demands of changing times.

*See also Pryor v. Thomas,* Ky., 361 S.W.2d 279 (1962).

█ Recognition of loss of consortium as a proper development of the common law does not invade the province of the legislature to determine public policy questions. It is beyond challenge that public policy is determined by the constitution and the legislature through the enactment of statutes. However, when those organs of public policy are silent, the decision can be made by the courts. *See Chreste v. Louisville Railway Co.,* 167 Ky. 75, 180 S.W. 49 (1915); *Kentucky State Fair Bd. v. Fowler,* Ky., 310 Ky. 607, 221 S.W.2d 435 (1949); *Commonwealth v. Wilkinson,* Ky., 828 S.W.2d 610 (1992). In the absence of a legislative decree, courts may adopt and apply public policy principles. *Owens v. Clemons,* 408 S.W.2d 642 (1966). There is no conflict between the legitimate development of the common law by the courts which takes proper recognition of the primary role of the legislature in the expression of public policy. The common law and public policy are compatible legal principles, they complement each other. The language in *Wilkinson, supra,* noted by the dissent, is clearly consistent with the reasoning of this opinion. The full text of the quote from *Wilkinson* states, "[J]udicially created common law must always yield to the superior policy of legislative enactment and the constitution." Our opinion today interprets the legislatively expressed public policy and conforms the common law to the public policy. There is no usurpation of the role of the legislature.

The issue here is not a determination that is exclusively a legislative prerogative. When the common law is out of step with the times, this Court has a responsibility to conform the common law. It is indeed not the province of the legislature to develop the common law and the legislature's failure to do so does not render this Court incompetent to enact such necessary change. *Cf. Hilen v. Hays* at 717.

The Court is aware that a bill was introduced in the 1996 Kentucky General Assembly to modify KRS 411.145 so as to permit a child to recover damages for loss of parental consortium, but Senate Bill 139 never got out of committee. *See* Legislative Record Vol. 22, No. 85 at 23. The failure of the legislature to act does not negatively impact the authority of this Court to adopt and conform the common law. A somewhat similar situation involving legislative inaction existed in 1984 when *Hilen v. Hays* was rendered establishing comparative negligence.

The claim of loss of parental consortium is a reciprocal of the claim of the parents for loss of a child's consortium which was recognized in KRS 411.135.

> To recognize a right of recovery for a parent's loss of child's consortium and not for a child's loss of parent's consortium, runs counter to the fact that in any disruption of the parent-child relationship, it is probably the child who suffers most ... legal redress may be the child's only means of mitigating the effect of that loss.

*Weitl v. Moes,* Iowa, 311 N.W.2d 259 (1981). We are persuaded by the decision in *Weitl* that there is no legal distinction between the claim of a parent for loss of a child's consortium from the claim of a child for the loss of a parent's consortium. *See also Ueland v. Reynolds Metals Co., supra,* in recognizing

the loss of love and companionship resulting from the injury to a child.

It should be remembered in this case it is certainly not a foregone conclusion that any of the Giuliani plaintiffs will prevail at trial. In addition, the Kentucky statutes provide for a distribution of any proceeds of a wrongful death action to the surviving children. The risk of double recovery, if any, is unconvincing as a reason to refuse to recognize a child's claim for loss of parental consortium. Concerns that insurance costs will rise and that double recovery will supposedly occur are unconvincing. The permanent economic loss of the mother and her conscious pain and suffering are entirely independent of the claims of the children for loss of parental consortium. Under a proper instruction, we believe that a jury is quite capable of making such a distinction.

> ·As noted in my dissent in *Adams, supra:* Jurisdictions which have refused to recognize recovery for loss of parental consortium have usually done so out of a fear of multiplicity of actions, the difficulty of assessing damages, the fear of double recovery or the burden which might be placed on society. However, all of these concerns are outweighed by the need to protect children.

In addition the dissent further states:

> Courts which have accepted the cause of action for loss of parental consortium have found the concerns of double recovery and speculation on the appropriate amount of damages recoverable to be unfounded. The injury in a loss of parental consortium claim is no more remote than the injury in a spouse's cause of action for loss of consortium, which Kentucky already recognizes ... Moreover, courts have recognized that duplicity of recovery can be easily avoided by a proper jury instruction that the child's damages are separate and distinct from the parent's injury.

■ *Department of Education v. Blevins,* Ky., 707 S.W.2d 782 (1986), held that the parent's claim for loss of a child's consortium is independent and separate from a wrongful death action and shall not be treated as a single claim. Even though a wrongful death action and a loss of consortium claim may arise from the same injury, they belong to separate legal entities and consequently should not be treated as a single claim. *Adams, supra,* held that wrongful death damages are not meant to include the family's loss. Damages in the wrongful death statute compensate for loss of the deceased's earning power and do not include the affliction to the family as a result of the wrongful death. *See Louisville & Nashville R.R. Co. v. Eakin's Adm'r,* 103 Ky. 465, 45 S.W. 529 (1898).

Kentucky Constitution Section 241 provides in pertinent part:

> Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same.

The court recognizes the arguments presented by the appellees that there are approximately 21 states that have refused to recognize the right of action for loss of parental consortium. The mere fact that some states have chosen to add language to their wrongful death statutes to provide for such recovery is not convincing to us. This Court is not creating new legislation, it is merely recognizing natural changes in the common law as distinguished from statutory law. The development of the entire content of the law is not the exclusive property of one branch of government. Different circumstances require different remedies from either the legislature or the court system. Our recognition of the right to parental consortium is different from the wrongful death statutes because such statutes are generally limited to economic loss. Parental consortium is based on the loss of love and affection. It remains to be seen how the courts and triers of fact will evaluate such loss in monetary terms. The same is true of insurance settlement arrangements. The loss of parental consortium is simply another factor to be considered in reaching a fair and equitable conclusion to any constitutionally protected wrongful death claim.

The common law concept of loss of parental consortium has gradually evolved from

the very nature of the basic relationship between parent and child. It is not a complex or difficult concept to understand, although it may be difficult for some to accept. At its core is accountability, not just monetary recovery. Loss of parental consortium is only a factor in the overall package of responsibility that is to be considered in determining the harm caused by a wrongdoer and the ultimate award of monetary damages, if any.

Caution should be exercised in the application of the loss of parental consortium just as in every other aspect of any legal action. Rampant rumors and undue alarm regarding imagined consequences are wholly unwarranted. Nothing in this record supports any excuse for an increase in insurance costs. Insurance premiums must be measured by experience and loss ratio as elements to be considered but not speculation.

█ It is the holding of this Court that Kentucky recognizes the claim of minor children for loss of parental consortium. The proof of such loss and the necessary proof of monetary loss resulting therefrom are factors to be considered by the trier of fact separate from any wrongful death claim pursued under the wrongful death statute. A claim for loss of parental consortium arises from a recognition of the common law as distinguished from statutory law.

The decision of the Court of Appeals is reversed and this matter is remanded to the circuit court.

GRAVES, STUMBO and WINTERSHEIMER, JJ., and F. THOMAS CONWAY, Special Justice, concur.

COOPER, J., dissents by separate opinion in which STEPHENS, C.J., and LAMBERT, J., join.

JOHNSTONE, J., not sitting.

COOPER, Justice, dissenting.

Respectfully, I must dissent, not because the notion of awarding damages to a child for loss of parental consortium is without merit, but because the Constitution of Kentucky has removed the issue from the jurisdiction of this Court.

There is not and never has been a common law right of action for wrongful death. *Smith's Adm'r v. National Coal & Iron Co.,* 135 Ky. 671, 117 S.W. 280 (1909); *Eden v. Lexington & Frankfort R.R. Co.,* 53 Ky. (14 B. Mon.) 204 (1853). "The maxim, 'Actio personalis moritur cum persona,' was the uniform rule of the common law, and prevails in Kentucky to-day (sic), except where it has been modified by the express language of the Constitution and statute." *Gregory v. Illinois Cent. R. Co.,* Ky., 80 S.W. 795 (1904).

The history of wrongful death statutes began in England with the adoption of Lord Campbell's Act in 1846. The first such statute in Kentucky was adopted in 1851, Rev. Stats., ch. 31, § 1, and granted a cause of action to a widow and minor child of one killed in a duel. In 1854, the General Assembly enacted a statute allowing recovery for death arising from "the neglect or misconduct of railroad companies and others." 1 Acts 1853–54, p. 175, ch. 964. The cause of action was. vested in the "widow, heir or personal representative of the deceased." This statute, as amended, was later compiled as General Statutes, ch. 57, § 3, then as Kentucky Statutes of 1903 (Carroll's Ky. Stats.) ch. 1, § 6, and now as KRS 411.130. In 1866, the General Assembly enacted a statute permitting the widow and children to recover for the death of their husband/parent caused by the careless or wanton or malicious use of a firearm, provided the perpetrator was not acting in self-defense. Rev. Stats., Myers Supp. 681 (1866). This statute was also recompiled within General Statutes, chapter 57, which then became Kentucky Statutes of 1903 (Carroll's) ch. 1, § 4, and is now KRS 411.150. For a more detailed history of our wrongful death statutes, see *Sturgeon v. Baker,* 312 Ky. 338, 227 S.W.2d 202 (1950), *Jordan's Adm'r v. Cincinnati, N.O. & T.P. Ry. Co.,* 89 Ky. 40, 11 S.W. 1013 (1889), and *O'Donoghue v. Akin,* 63 Ky. (2 Duv.) 478 (1866).

Prior to the adoption of the 1891 Constitution, there was substantial confusion and uncertainty not only as to whom the cause of action to recover damages belonged, but when the action might be maintained, if at all. *Howard's Adm'r v. Hunter,* 126 Ky. 685,

104 S.W. 723, 725 (1907). For example, in *Henderson's Adm'r v. Kentucky C. Ry. Co.,* 86 Ky. 389, 5 S.W. 875 (1887), it was held that the word "heir" in Gen. St., ch. 57, § 3 was limited to a child or children of the deceased. The Court invited the legislature to cure this defect, but two efforts to do so were defeated in the House of Representatives. 4 *Debates of Constitutional Convention of 1890,* 4686–87. In fact, Delegate William Goebel, whose subsequent gubernatorial election, assassination, and deathbed inauguration are chronicled in *Taylor v. Beckham,* 108 Ky. 278, 56 S.W. 177 (1900), related on the floor of the 1890 constitutional convention that the second such bill had been "carried away from the city of Frankfort and kept away for months for the express purpose of preventing a consideration of it." *Debates, supra,* at 4687.

Furthermore, just prior to the 1890 constitutional convention, a judge of the Jefferson Circuit Court had declared another section of the wrongful death act unconstitutional, because it purportedly discriminated against railroads. *Id.* This undoubtedly contributed to the delegates' concerns as to the future viability of tort recovery for wrongful death. (The Jefferson Circuit Court's ruling was reversed on appeal, *Louisville Safety–Vault & Trust Co. v. Louisville & N.R. Co.,* 92 Ky. 233, 17 S.W. 567 (1891), but not until after the convention had concluded its work.) What is clear from the convention debates is that the delegates trusted neither the legislature nor the courts to protect the statutory cause of action for wrongful death. It was in this atmosphere that the delegates adopted Section 241 of our present Constitution, which provides in its entirety (the majority opinion quotes only the first sentence) as follows:

> Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same. *Until otherwise provided by law,* the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. *The General Assembly may provide how the recovery shall go and to whom belong;* and until such provision is made, the same shall form part of the personal estate of the deceased person.

(Emphasis added.) Thus, the delegates clearly intended to vest in the legislature the sole authority to determine what causes of action would be permitted, who would be authorized to bring those actions, what damages would be recoverable, and to whom the damages would belong. Delegate Goebel stated just moments before the favorable vote on Section 241:

> Does not this provide that the General Assembly may provide how and to whom the recovery shall go and belong? *We expressly leave that matter to the Legislature;* but say, until there is something different provided on the subject, the recovery shall go as part of personal estate of the deceased. I take it, that after the cause of action has been created, the General Assembly will provide for a just distribution of their recovery.

*Debates, supra,* at 4719 (emphasis added). If the legislature did not act, then Section 241 was self-executing, *i.e.,* the cause of action was constitutionally created, the personal representative had sole authority to bring the action, and the damages belonged to the estate of the deceased to be distributed in accordance with his last will and testament, or, if none, in accordance with the laws of descent and distribution. *Thomas v. Royster,* 98 Ky. 206, 32 S.W. 613 (1895).

When the legislature enacted chapter 1, § 6 of the Kentucky Statutes of 1903, now KRS 411.130, it provided first that an action for wrongful death premised upon the negligence or wrongful act of another could be brought only by the personal representative of the deceased, then provided how the damages recovered in that action would be distributed. As pertains to the facts of this case, one-half of the recovery is for the benefit of the husband of the deceased and one-half for the benefit of her children. The measure of damages recoverable for wrongful death was established in *Louisville & N.R. Co. v. Eakins' Adm'r,* 103 Ky. 465, 45 S.W. 529 (1898) as being the sum which would fairly compensate the estate of the

deceased for the destruction of his ability to earn money, and specifically *not* for the affliction which had overtaken the decedent's family as a result of his death.

> There is no rule of law under which the estate of a deceased father of a dozen children can properly recover, on account of his death, more than the estate of such a father of one child or none. The real question in the case is, what was the value of the decedent's life to his estate? and the number of his children can have no legitimate bearing upon that question....

*Id.,* 45 S.W., at 531. Logic supports this conclusion; for the personal representative represents only the decedent's estate, and the estate can recover only for the loss of the decedent's life, not for damages personal to his survivors. As Justice Leibson succinctly noted in his dissent (on other grounds) in *Adams v. Miller,* Ky., 908 S.W.2d 112 (1995),

> Kentucky's wrongful death statute is not a survivor's loss statute, so it does not provide a basis for extending a right of recovery for minor children for loss of parental care.

*Id.* at 117. Thus, we have consistently held that absent a legislative enactment, there can be no cause of action for loss of services or loss of consortium as a result of wrongful death. *E.g., Adams v. Miller, supra; Brooks v. Burkeen,* Ky., 549 S.W.2d 91 (1977); *Gregory v. Illinois Cent. R. Co.,* Ky., 80 S.W. 795 (1904); *Harris v. Kentucky Lumber Co.,* Ky., 45 S.W. 94 (1898).

In 1968, the legislature enacted KRS 411.135, which permits a parent of a deceased child whose death resulted from the wrongful act of another to bring an action for the loss of affection and companionship of that child. 1968 Ky. Acts, ch. 30, § 2. In *Department of Education v. Blevins,* Ky., 707 S.W.2d 782 (1986), we upheld the constitutionality of that statute as being within the authority granted to the legislature by Section 241. The legislature has seen fit not to enact a comparable statute giving a child a cause of action for the loss and companionship of a deceased parent. In fact, as recently as the 1996 regular session of the General Assembly, Senate Bill No. 139, which would have created such a cause of action, was introduced and rejected. That action, which the majority opinion mischaracterizes as inaction, was also within the legislature's constitutionally granted prerogative.

Today, the majority opinion holds in this case that because the legislature rejected Senate Bill No. 139, this Court shall enact it by judicial fiat. In so doing, the majority has exceeded the constitutional jurisdiction of this Court.

There are few constitutional principles more sacred than the doctrine of Separation of Powers. This principle is strongly enunciated in Section 27 of our Constitution, which establishes three separate and distinct branches of government, and in Section 28, which specifically prohibits one branch from exercising any power belonging to either of the others, except as permitted elsewhere in the Constitution. Until today, we have zealously protected the constitutionally defined domains of each branch of government against intrusions by the others. *E.g., Legislative Research Commission v. Brown,* Ky., 664 S.W.2d 907 (1984) (legislative encroachment upon the executive branch); *Ex parte Auditor of Public Accounts,* Ky., 609 S.W.2d 682 (1980) (executive encroachment upon the judicial branch); *Arnett v. Meade,* Ky., 462 S.W.2d 940 (1971) (legislative encroachment upon the judicial branch). We have been particularly circumspect with respect to requests by litigants to invade the constitutionally defined province of the legislature, even when we believe the legislature has made a wrong decision, so long as the decision was merely wrong and not unconstitutional.

> [T]he fact that the legislature may make a wrong decision is no reason why the judiciary should invade what has been designated as the exclusive domain of another department of government.... With respect to this subject matter, the people have reposed that responsibility in the legislature. The courts are without jurisdiction to review its solemn determination.

*Raney v. Stovall,* Ky., 361 S.W.2d 518, 523–24 (1962); *see also Taylor v. Beckham, supra,* 56 S.W., at 184; *cf. Jensen v. State Board of Elections,* 949 S.W.2d 572, 578 (1997). Likewise, Section 241 of the Constitution has reposed in the legislature the re-

sponsibility for determining who can recover what damages for the wrongful death of another. An action for the loss of affection and companionship of a deceased parent is neither more nor less than an action for the death of that parent. *Harris v. Kentucky Lumber Co., supra.*

The majority's reliance upon *Kotsiris v. Ling,* Ky., 451 S.W.2d 411 (1970) is misplaced. In that case, we granted a wife a common law right of action for the loss of consortium of her husband resulting from the wrongful infliction of personal injuries upon him. Since that action was not a claim for wrongful death, Section 241 was not implicated by our decision. The majority's citation to *Dietzman v. Mullin,* 108 Ky. 610, 57 S.W. 247 (1900) is more curious, since that was an action brought by a married woman for the alienation of the affections of her husband, a common law cause of action which we have since abolished. *Hoye v. Hoye,* Ky., 824 S.W.2d 422 (1992). Nor does *Hilen v. Hays,* Ky., 673 S.W.2d 713 (1984) have any relevance here. That case dealt with this Court's role in the development of the common law. A constitutional provision preempts the common law. Ky. Const., § 233; *Adams Bros. v. Clark,* 189 Ky. 279, 224 S.W. 1046, 1048 (1920). "Judicially created common law must always yield to the superior policy of legislative enactment and the Constitution." *Commonwealth, ex rel. Cowan v. Wilkinson,* Ky., 828 S.W.2d 610, 614 (1992). Particularly unpersuasive are the majority's string citations to cases from foreign jurisdictions which do not have constitutional provisions similar to Section 241 and to statutes enacted by the legislatures of other states. If the 1996 General Assembly had enacted Senate Bill 139, Appellants would not be here today asking this Court to enact it by judicial fiat.

The majority also cites "public policy" as a basis for usurping the General Assembly's constitutional prerogative with respect to this issue. Yet, only five years ago, the author of the majority opinion in this case wrote the following in *Commonwealth, ex rel. Cowan v. Wilkinson, supra:*

> [T]he establishment of public policy is not within the authority of the courts. Section

27 of the Kentucky Constitution provides that the powers of government be divided into three distinct units: Executive, Legislative and Judicial. The establishment of public policy is granted to the legislature alone. . . .

.  .  .  .  .

> The courts cannot legitimately usurp the province of [another branch of government] by applying some theory of common law public policy.

*Id.* at 614. Yet, in this case, we illegitimately usurp the province of the legislature in direct contravention of the mandates of Sections 28 and 241 of our Constitution.

For these reasons, I would affirm the decision of the Court of Appeals.

STEPHENS, C.J., and LAMBERT, J., join this dissent.