RENDERED: JUNE 27, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0654-MR

RUSSELL ROBERTS AND ANGIE
ROBERTS                                                            APPELLANTS


                        APPEAL FROM PULASKI CIRCUIT COURT
v.                      HONORABLE TERESA WHITAKER, JUDGE
                        ACTION NO. 18-CI-00241


NORFOLK SOUTHERN
CORPORATION; NORFOLK
SOUTHERN RAILWAY COMPANY;
THE CINCINNATI, NEW ORLEANS,
AND TEXAS PACIFIC RAILWAY
COMPANY; WARNER FERTILIZER
COMPANY, INC.; AND
NATIONWIDE MUTUAL
INSURANCE COMPANY                                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, LAMBERT, AND McNEILL, JUDGES.

McNEILL, JUDGE: This case involves a collision between a train and an

automobile at a private railroad crossing. The circuit court found the railroad was

not negligent as a matter of law, citing *Calhoun v. CSX Transportation, Inc.*, 331 S.W.3d 236 (Ky. 2011). Appellants essentially ask us to disregard *Calhoun* and over a century of railroad tort law defining the duty owed at private crossings and impose upon railroads the same duty of care owed by all landowners towards business invitees.[1] However, any such remodeling of our train law must come from our Supreme Court. We must follow the track laid down by established precedent. Therefore, we affirm.

## BACKGROUND

On March 8, 2017, Russell Roberts ("Russell") was working on a fuel pump at Warner Fertilizer ("Warner") in Pulaski County, Kentucky. At Warner's entrance is a private railroad crossing ("Warner Crossing") owned by Norfolk Southern Corporation[2] ("Norfolk") and maintained by Warner. Warner Crossing is marked by a crossbuck[3] as well as a stop sign. Russell was familiar with the Warner property, having been there over one hundred times.

---

[1] While appellants argue they are not asking us to overturn *Calhoun* or expand the law, they are advocating for duties never owed at private railroad crossings before.

[2] Appellees (defendants at the trial court level) are Norfolk Southern Corporation; Norfolk Southern Railway Company; and the Cincinnati, New Orleans, and Texas Pacific Railway Company.

[3] As described by our Supreme Court, a crossbuck is "[a] sign indicating a railroad crossing, shaped like an 'X,' generally placed immediately before the crossing." *Calhoun*, 331 S.W.3d at 238 n.4.

Russell left Warner several times that day to obtain replacement fuel pump parts at a nearby hardware store. Each time he crossed the private crossing. On his final trip back from the hardware store, Russell failed to stop at the stop sign and was hit by a train.

Russell and his wife ("the Robertses") filed a lawsuit in Pulaski Circuit Court against Warner and Norfolk. Relevant to the appeal, the amended complaint alleged that Warner Crossing was ultra-hazardous, and that Norfolk had a duty to maintain the premises in a reasonably safe condition, including a duty to close the crossing. Relying upon *Calhoun*, Norfolk moved for summary judgment, asserting its duties were limited at a private crossing and under the facts it was not negligent as a matter of law.

Citing *Shelton v. Kentucky Easter Seals Society, Inc.*, 413 S.W.3d 901 (Ky. 2013), *as corrected* (Nov. 25, 2013), the Robertses responded that Norfolk, as landowner, had a duty to maintain the premises in a reasonably safe condition and to eliminate or warn of unreasonable risks of harm. *Id.* at 908, 914. Based on this duty, they argued Norfolk should have eliminated Warner Crossing. They further argued the Kentucky Supreme Court impliedly overruled *Calhoun* in *Shelton* and its progeny.

Following a hearing, the circuit court granted Norfolk's motion for summary judgment, finding it had not breached any duty owed as a matter of law.

The court found that Warner Crossing was a private crossing and thus Norfolk owed no duty of lookout or warning, citing *Calhoun*. Even assuming the crossing was ultra-hazardous (one of the exceptions to the minimal duty at private crossings rule), it was undisputed Norfolk had fulfilled its elevated duty to sound the train's horn. Therefore, summary judgment was proper. The court did not address the application of traditional premises liability law. This appeal followed.

## STANDARD OF REVIEW

"The standard of review on appeal of a summary judgment is whether the circuit judge correctly found that there were no issues as to any material fact and that the moving party was entitled to a judgment as a matter of law." *Pearson ex rel. Trent v. Nat'l Feeding Systems, Inc.*, 90 S.W.3d 46, 49 (Ky. 2002). Accordingly, we review a trial court's grant of summary judgment *de novo*. *Dolt, Thompson, Shepherd & Conway, P.S.C. v. Commonwealth ex rel. Landrum*, 607 S.W.3d 683, 686 (Ky. 2020) (citation omitted).

## ANALYSIS

As an initial matter, the Robertses' brief does not comply with RAP[4] 32(A)(4), which requires "at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." Our rules require a preservation statement to

---

[4] Kentucky Rules of Appellate Procedure.

assure the reviewing court that "the issue was properly presented to the trial court and therefore, is appropriate for our consideration." *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012). When a party fails to abide by the Rules of Appellate Procedure, we may choose "(1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions . . . ; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citations omitted); *see also Ford v. Commonwealth*, 628 S.W.3d 147, 153-55 (Ky. 2021). In our discretion, we ignore the deficiency and proceed with the review.

The Robertses argue the circuit court erred in failing to consider Norfolk's duties as a landowner under premises liability law and instead relied on "archaic principles" in granting summary judgment. They ask us "to impose on Norfolk the duty that our courts impose on all property owners towards business invitees." Specifically, they refer to the duty to "eliminate or warn of unreasonable risks of harm."[5] *Shelton*, 413 S.W.3d at 914. Under this duty,[6] the Robertses

---

[5] In addition to this specific duty, the Robertses also argue that railroads, like all landowners, have the general duty to maintain their premises in a reasonably safe condition, again citing *Shelton*, 413 S.W.3d at 908.

[6] In their reply brief, the Robertses contend Norfolk "violated its own safety policy when it failed to close the Warner Crossing." To the extent they are asserting Norfolk's negligence stemmed from the breach of its own policies, and that somehow summary judgment on this issue was inappropriate, we decline to consider this argument. "The reply brief is not a device for raising new issues which are essential to the success of the appeal." *Milby v. Mears*, 580 S.W.2d 724, 728 (Ky. App. 1979).

contend, Norfolk should have closed the unnecessary and ultra-hazardous private crossing.

However, we our bound by our Supreme Court's holding *Calhoun v. CSX Transportation, Inc.*, 331 S.W.3d 236, 247 (Ky. 2011), that Kentucky's century-old private crossing caselaw is still viable precedent.  In *Calhoun*, the Court was asked "to discard our long-standing, clearly delineated private crossing precedents, and adopt a new framework that 'everyone owes everyone else a duty to act reasonably to prevent foreseeable harm to the other.'"  *Id.* at 242.  The Court "decline[d] the invitation to alter our well-established precedent defining the duty owed at private crossings." *Id.* at 243.

The Robertses attempt to distinguish *Calhoun*, noting that it did not consider a railroad's duties as a landowner under premises liability law, and that it was decided prior to *Shelton* and *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288 (Ky. 2015).  While true *Calhoun* did not specifically address premises liability law, it is clear the Court was aware of its potential applicability.  Justice Venters' dissent in *Calhoun* advocated this exact standard to update our private crossing jurisprudence, 331 S.W.3d at 248, and yet the majority (impliedly) declined to adopt it.

As to *Shelton* and *Carter*, they are irrelevant to the issue.  These cases simply shifted the focus in open-and-obvious cases away from duty towards breach

of duty. *Shelton*, 413 S.W.3d at 910. They did not change the duties owed by landowners under premises liability law. Further, *Shelton* and *Carter* did not involve private railroad crossings.

Simply put, the Robertses urge us to apply a different standard of care to private crossings than what has been applied historically. This is the same request that was refused in *Calhoun*. While there may be legitimate reasons to modernize our private crossing tort law, *see, e.g.*, *Calhoun*, 331 S.W.3d at 247 (Venters, J., dissenting), those decisions are best left to our high court. *See Giuliani v. Guiler*, 951 S.W.2d 318, 319 (Ky. 1997), *as modified on denial of reh'g* (Oct. 2, 1997) (noting it is the Supreme Court's responsibility to modify and conform the common law to the changing conditions of our society).

## CONCLUSION

Accordingly, the Pulaski Circuit Court's order granting summary judgment to Norfolk is affirmed.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEES: |
|---|---|
| Thomas E. Carroll<br>Monticello, Kentucky | Robert B. Cetrulo<br>Edgewood, Kentucky |